1  CROWELL & MORING LLP
   Warrington Parker III (SBN 148003)
2  WParker@crowell.com
   3 Embarcadero Center, 26th Floor
3  San Francisco, CA 94111
   Telephone: (415) 986-2800
4  Facsimile: (415) 986-2827

5  CROWELL & MORING LLP
   Alexander J. Urbelis  (pro hac vice pending)
6  AUrbelis@crowell.com
   Preetha Chakrabarti (pro hac vice pending)
7  PChakrabarti@crowell.com
   590 Madison Avenue, 20th Floor
8  New York, NY 10022
   Telephone: (212) 223-4000
9  Facsimile: (212) 223-4134

10 *Attorneys for Movant*
   *Shulim Leifer*
11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16 SHULIM LEIFER                      Case No. 3:22-mc-80319

17              Movant,

18      v.                            **DECLARATION OF WARRINGTON
                                      PARKER IN SUPPORT OF PLAINTIFF
                                      SHULIM LEIFER'S NOTICE OF MOTION
19 TWITTER, INC.                      AND MOTION TO COMPEL TWITTER,
                                      INC. TO RESPOND TO SUBPOENA;
20              Respondent.           MEMORANDUM OF POINTS AND
                                      AUTHORITIES**
21
                                      Date:      TBD
22                                    Time:      TBD
                                      Ctrm:      TBD
23                                    Judge:     TBD

24

25

26      I, Warrington Parker, hereby declare and state as follows:

27      1.      I am a partner at Crowell & Moring LLP, and am counsel for movant Shulim

28 Leifer ("Leifer") in the above captioned matter.  I have personal knowledge of the facts set forth

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PARKER DECL. ISO NTC OF MTN AND
MTN TO COMPEL, TWITTER RE SUBPOENA
CASE NO. 3:22-MC-80319

1    below, except when such matter is stated upon information and belief and, as to those facts, I

2    believe them to be true.  If called as a witness, I could and would testify competently thereto.

3        2.    I submit this declaration in support of Movant Leifer's Notice of Motion and

4    Motion to Compel Twitter, Inc. to Respond to Subpoena and accompanying Memorandum of

5    Points and Authorities.

6        3.    Leifer is the Plaintiff in the case *Shulim Leifer v. John Does 1-9, Civil Action No.*

7    *22-CV-1770-NM-SJB*, pending in the United States District Court for the Eastern District of New

8    York (the E.D.N.Y. Action).

9        4.    Attached hereto as **Exhibit 1** is Leifer's Subpoena to Produce Documents,

10   Information, or Objects to Permit Inspection of Premises in a Civil Action (the "Subpoena").

11   Leifer sought expedited discovery, specifically to issue the Supboena, (Exh. 3) and served the

12   Supbponea on May 26, 2022 on Twitter, Inc. ("Twitter") at Twitter's New York office, located at

13   245 W 17th St, New York, NY 10011.

14       5.    Attached hereto as **Exhibit 2** is Leifer's Complaint, filed on April 8, 2022 with

15   accompanying Exhibits 1-17 filed with the Complaint.  Complaint, Civ. No. 22-CV-1770-NM-

16   SJB, ECF No. 5.

17       6.    Attached hereto as **Exhibit 3** is Leifer's Motion for Expedited Discovery in the

18   E.D.N.Y. Action filed on May 11, 2022.  Pl's. Mot. Disc., Civ. No. 22-CV-1770-WFK-SJB, ECF

19   No. 6.

20       7.    Attached hereto as **Exhibit 4**, is an Order issued on May 17, 2022, by Magistrate

21   Judge Sanket J. Bulsara, granting Leifer's Motion for Expedited Discovery and allowing Leifer to

22   serve Twitter with the Subponea (Exh. 1). Order Disc., Civ. No. 22-CV-1770-WFK-SJB, ECF

23   No. 7.

24       8.    Attached here to as **Exhibit 5**, is an Order issued on June 26, 2022, by Magistrate

25   Judge Sanket J. Bulsara, granting a Joint Motion for an Extension of Time.  Order Disc., Civ. No.

26   22-CV-1770-NM-SJB, ECF No. 11.

27       9.    Attached hereto as **Exhibit 6** is the letter Leifer and Leifer's counsel received from

28   Twitter on July 1, 2022, through counsel.  Twitter conveyed their refusal to respond to the

1   Subpoena (Exh. 1).

2          10.     Attached hereto a **Exhibit 7** is the Affidavit of Service created when Leifer served

3   Twitter with the Subpoena on May 26, 2022 at Twitter's New York office (Exh. 1).

4          I declare under penalty of perjury under the laws of the State of California and the United

5   States of America that the foregoing is true and correct.

6          Executed on November 21, 2022, in San Franscisco, California.

7

8   Dated: November 21, 2022                    CROWELL & MORING LLP

9

10                                              By:  */s/ Warrington Parker, III*

11                                              Warrington Parker, III
                                                *Attorneys for Movant*
12                                              *Shulim Leifer*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-3-

PARKER DECL. ISO NTC OF MTN AND
MTN TO COMPEL, TWITTER RE SUBPOENA
CASE NO. 3:22-MC-80319

# Exhibit 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | | |
|---|---|---|
| Shulim Leifer | ) | |
| *Plaintiff* | ) | Civil Action No. 1:22-cv-01770-WFK-SJB |
| v. | ) | |
| John Does 1-9 | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Twitter, Inc.; 245 W 17th St, New York, NY 10011

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: the information sought in Attachment A for the Twitter handles: @erpsmosh; @KleinMatt1; @Ralphhoppy; @YankyStern4; @ConservativeYi1; @Frauholla3; @BaruchSilverst1; @yafered; @ShulimLeifer (spelled with a capital "i" in place of the "L" in Shulim).

| Place: Crowell & Moring LLP 590 Madison Avenue, 20th Floor New York, NY 10022 | Date and Time: 05/25/2022 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:          05/09/2022

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Shulim Leifer _____, who issues or requests this subpoena, are:
Alexander Urbelis; 590 Madison Avenue 20th Floor, New York, NY 10022; aurbelis@crowell.com; 212-895-4254

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

**_Shulim Leifer v. John Does 1-9,_ 20 Civil Action No. 1:22-cv-01770-WFK-SJB**

*Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

Electronically stored information - for the Twitter handles: @erpsmosh; @KleinMatt1; @Ralphhoppy; @YankyStern4; @ConservativeYi1; @Frauholla3; @BaruchSilverst1; @yafered; @ShuIimLeifer (spelled with a capital "i" in place of the "L" in Shulim):

- the full first and last name associated with the handles /accounts;

- basic subscriber information, including handles / accounts used, email addresses, telephone numbers, account creation dates, and Internet Protocol addresses ("IP addresses") used for account creations;

- records concerning the devices (cell phones, tablets, or computers) registered to the account holders;

- login dates and times together with the IP addresses associated with the account logins; and

- all physical addresses, if any, associated with the accounts.

# Exhibit 2

Alexander J. Urbelis
AUrbelis@crowell.com
Preetha Chakrabarti
PChakrabarti@crowell.com
**CROWELL & MORING LLP**
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000
Facsimile: (212) 223-4134

*Attorneys for Plaintiff*
*Shulim Leifer*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHULIM LEIFER,**<br><br>Plaintiff,<br><br>– against –<br><br>**JOHN DOES 1–9,**<br><br>Defendants. | Civil Action No.: 22-CV-1770-WFK-SJB<br><br>**COMPLAINT**<br><br>*DOCUMENT PHYSICALLY FILED* |

Plaintiff Shulim Leifer, by and through his attorneys, Crowell & Moring LLP, for his Complaint against Defendants John Does 1–9, hereby alleges as follows:

### NATURE OF THE ACTION

1. This case arises out of Defendants, John Does' ("Does"), defamatory postings about Plaintiff Shulim Leifer ("Leifer") on the social media platform, Twitter, fraudulent and unauthorized access of Leifer's social media accounts, and continued threats and harassment of Leifer on Twitter.

2. Leifer seeks injunctive relief and damages arising out of Does' defamatory postings, fraudulent and unauthorized access of Leifer's accounts, and intentional infliction of emotional distress.

3.      These actions have already harmed Leifer and will continue to harm Leifer until such time as the Does are identified and ordered to cease (i) making any and all defamatory remarks against Leifer, (ii) accessing without authorization Leifer's social media accounts, and (iii) harassing and threatening Leifer. As a result, these actions have created in Leifer a state of distress and fear and have thwarted his and his family's ability to move and live freely within his community.

4.      This lawsuit asserts New York state common law claims for (a) defamation per se and (b) intentional infliction of emotional distress, and computer fraud and abuse pursuant to The Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

## PARTIES

5.      Plaintiff Shulim Leifer is a natural person that is domiciled in Brooklyn, New York, where he resides with an intent to stay indefinitely.

6.      Defendants John Does 1–9 are various natural persons unknown to Leifer, with unknown domicile, who published defamatory content ("Defamatory Articles") on the social media platform Twitter and accessed Leifer's social media accounts without authorization.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because, upon information and belief, some or all of the Defendants are located outside the State of New York.

8.      This Court additionally has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 based on the claim under The Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

9.      The venue in this action is proper within the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), in that (i) Leifer is a resident of New York; (ii) the claims

asserted by Leifer arose within this judicial district and (iii) there is no district in which this action may otherwise be brought.

10.     Defendants are subject to personal jurisdiction in the State of New York and the federal district court for the Eastern District of New York because (i) they caused injury to persons located in New York, (ii) upon information and belief, some of the Defendants are located inside the State of New York and this district, and (iii) there is no other district in which this action may otherwise be brought.

## BACKGROUND FACTS

11.     Leifer was born, raised, and remains a member of the Hasidic Orthodox Jewish community ("Hasidic Community") in New York City, largely located in Brooklyn. Additionally, Leifer's family is part of the Hasidic Community. Leifer is married and has three children.

12.     The Hasidic Community is both large and very intertwined. The community could accurately be called a subculture or insular kinship group. Many Hasidic communities exist around the world, including the robust one Leifer is a member of in Brooklyn.[1]

13.     Lack of formal and/or secular education is an issue within the Hasidic Community. Formal education consistent with standard public school education requirements is not provided for boys in the Hasidic Community. In general, boys may receive an education consistent with a 4th grade public school education.

14.     For example, a complaint filed by Young Advocates for Fair Education ("YAFFED") with the New York City Department of Education and New York State Department of Education in 2015 called for consistency in educational requirements across public and private schools.[2] The investigation has been ongoing and involves reviewing the

---

[1] See https://www.pbs.org/alifeapart/intro.html.
[2] See https://www.nytimes.com/2018/12/03/nyregion/yeshivas-new-york-schools-education.html.

practices of schools within the Hasidic Community.

15.    Leifer himself only received the equivalent of a 4th grade education. In 1997, after seven years in school, Leifer was asked by school administration to permanently leave his 7th year classroom for correcting his teacher and was also subjected to corporal punishment in that same school.

16.    Due to his upbringing within the Hasidic Community, Leifer has minimal education. Nonetheless, Leifer, since 2010, has been able to pursue a successful career as an executive in a niche area of home healthcare, which is an industry heavily represented by the Hasidic community. Given Leifer's lack of formal education, home healthcare is one of the few career areas available because of how many members of the Hasidic community own businesses in this field.

17.    Leifer began working in the field of home healthcare in 2010. Leifer's first job was as a Marketing Account Manager. He continued to work at the same home healthcare agency for eight years and eventually became the Executive Director of Operations. Leifer has briefly worked at a few other home healthcare agencies since 2018 as a Director or Executive Officer. Leifer's current resume is attached as Exhibit No. 1.

18.    Leifer has had an impressive and successful career in home healthcare even with a lack of formal education. As many of the home healthcare agencies are owned by members of the Hasidic community in New York City, Leifer's reputation within the field of home healthcare and the Hasidic community are vital to his career success. Given Leifer's education level, he relies on his reputation in his career to maintain employment.

19.    Leifer, around the fall of 2019, became a vocal, public advocate against social ills that exist within the Hasidic Community. Namely, Leifer advocates for educational reform and advancements within the Hasidic Community. Leifer advocates for reforms of other issues

as well, many of which naturally flow from the lack of education within the community.

Recently, Leifer also became an advocate for responsible safety practices during the

COVID-19 pandemic.

20.     Leifer's advocacy has included: various articles in publications such as the

Daily News; creating an Independent Expenditures Committee in the New York City mayoral

race; involvement with YAFFED; and appearing as a stakeholder in the New York

Department of Education hearings regarding proposed regulations overseeing Yeshiva related

education, all of which Leifer has advanced through his social media presence that has taken

him years to develop.

21.     Leifer is one of few educational advocates situated in his unique position—he

remains a member of the Hasidic Community that he is critiquing. Indeed, Leifer is one of the

only people publicly advocating for educational reforms from within the community.

22.     Leifer's reputation is essential to his advocacy. His excellent reputation

provides credibility, allows him to substantiate his role as an advocate, and to generally

withstand unfounded criticism.

23.     Leifer's advocacy has been addressed by various publications worldwide.

These publications include the New York Times,[3] the Jerusalem Post,[4] the Jewish Telegraphic

Agency,[5] (worldwide Jewish community reporting), the Forward,[6] (American Jewish

community reporting), News12 Westchester,[7] and the Gothamist.[8] Leifer's reputation

---

[3] See https://www.nytimes.com/2020/04/21/nyregion/coronavirus-jews-hasidic-ny.html.
[4] See https://www.jpost.com/diaspora/seeing-the-coronavirus-affair-in-new-york-from-the-orthodox-perspective-645887, and https://www.jpost.com/diaspora/after-supreme-court-ruling-new-yorkers-go-back-to-synagogue-651101.
[5] See https://www.jta.org/2020/01/13/united-states/new-york-is-trying-to-reform-the-orthodox-yeshiva-system-which-some-graduates-say-barely-taught-them-to-speak-english.
[6] See https://forward.com/news/466668/hasidic-brooklyns-child-matchmaker-is-under-investigation/, https://forward.com/news/464423/in-the-ultra-orthodox-world-raising-1-million-for-covid-victims-is-easier/, https://forward.com/news/476631/rabbi-yoel-roth-hasidic-child-marriage-heichel-hakodesh-breslov/, and https://forward.com/news/448114/how-new-yorks-ultra-orthodox-are-responding-to-george-floyd-protests-blm/.
[7] See https://westchester.news12.com/leaked-video-appears-to-show-monsey-teacher-beating-yeshiva-student-in-class-41246272.
[8] See https://gothamist.com/news/orthodox-borough-park-residents-burn-masks-beat-dissenters-over-covid-lockdown,

- 5 -

continues to grow within the worldwide Hasidic Community.

24.     Leifer's advocacy has received pushback and opposition. There are many
Hasidic Community defenders on Twitter that promote the traditions of the community and
criticize Leifer. Leifer is known in the community for his Twitter presence and is considered
an iconoclast. A rapid response team of many social media accounts (some of which are
anonymous or fictitious personalities) are often activated any time Leifer or other advocates
make progress or an advocacy-based event occurs. The goal of these responses is to provide a
counter narrative discrediting the advocates.

25.     Exact locations of the Twitter account users are not known and some
anonymous Twitter accounts have had prior identifiers for locations outside of New York,
such as for Lakewood, New Jersey or even Vienna, Austria. Leifer is a name known within the
international Hasidic Community, based on the various publicity of his activism, and it is
likely that Leifer's defamers exist in Hasidic communities outside of New York. Indeed, some
of the English language grammatical errors of defamatory statements made on social media
suggest residence outside the United States. *See infra* ¶ 30.

26.     Leifer acknowledges as a public advocate that he will receive criticism from
others. However, in the last year, general criticism and internet trolling has evolved to include
intentional false allegations asserted specifically to malign Leifer's character and discredit
Leifer as an activist.

27.     Leifer was first impugned by defamatory tweets on January 6, 2021. The tweets
came from the account @KolYisrael. An initial tweet questioned "Starting to call people
names, should we discuss here why you were fired from your job?" And a follow up tweet
stated "violations #metoo[.]" @KolYisrael defamed Leifer by alleging he was fired from his

---

and https://gothamist.com/news/brooklyn-ultra-orthodox-jewish-coronavirus-cases.

job because of "me too" violations, insinuating Leifer engaged in inappropriate behavior with women at his place of employment. These tweets are attached as Exhibit Nos. 2, 3.

28.     But in fact, Leifer had not been fired from his job, and these accusations were false. Accordingly, Leifer responded to this tweet, on the same day, stating "Lie and falsehood" in Hebrew. @KolYisrael responded by saying "This is no laughing matter. Denial is the initial response of everyone exposed for such matters. Should we get into the gory details? Name names?" Leifer again responded by saying "Yes please[,]" immediately illustrating he believed the account had no evidence to support the accusation. These tweets are attached as Exhibit Nos. 2, 3.

29.     @KolYisrael is an anonymous account, but is not an unnamed defendant (John Doe) in this complaint because the tweets from @KolYisrael are from over one year ago and would be barred by statute of limitations for defamation in New York. However, the tweets are included for context.

30.     Leifer received a further defamatory tweet on May 26, 2021. The tweet came from the account **@erpsmosh**. The tweet alleged "Or else ull look like shulim liefer u c he was fired from a job for harrasing a woman . Y ? Cuz in his desperation to look with it and cool he thought u have to harrass woman" (errors in original). @erpsmosh defamed Leifer by alleging he was fired from his job because he harassed female colleagues. This tweet is attached as Exhibit No. 4.

31.     @erpsmosh is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

32.     Leifer received further defamatory tweets on June 23-24, 2021. The tweets came from the account **@KleinMatt1** and tagged the account @Yochidonn. These tweets alleged "You were fired from a home care agency," "Leifer dumbhead. I'm told you have lots

of skeletons and you are a scumbag," and "You are lying. You were 'fired' because you behaved like a animal." @KleinMatt1 defamed Lefier by similarly alleging he was fired from his job because he "behaved like a animal." These tweets are attached as Exhibit No. 5.

33.    Terry Kleinman is the name associated with the @KleinMatt1 Twitter account. Terry Kleinman, upon information and belief, is a fake name. Thus, @KleinMatt1 is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

34.    On the same day, June 23, 2021, Leifer received another defamatory tweet from a Twitter account called **@Ralphoppy**. The tweet alleged "Pls before u defend shulim liefer go check his past y he was fired 2 jobs in 2 years. Mayb speak to women who filed the complaints. Believe what u want abt education but shulim liefer shud not be ur guy[.]" @Ralphoppy defamed Leifer by alleging he was fired from two jobs because of complaints filed by women, again insinuating Leifer engaged in inappropriate behavior with women at each of his work places.  These tweets are attached as Exhibit No. 6.

35.    @Ralphoppy is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

36.    Leifer received further defamatory tweets on July 29, 2021. The tweets came from the account **@YankyStern4**. Two tweets from this account referred to false and nonexistent sexual harassment allegations against Leifer. These tweets are attached as Exhibit No. 7.

37.    @YankyStern4 is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

38.    Another individual, Rabbi Eliezer Brand, tweeted about Leifer's employment in November 2020 using the Twitter account @RabbiEBrand. These tweets precede the aforementioned anonymous tweets. These tweets similarly alleged that Leifer lost his job due

to complaints filed by women regarding sexual harassment. However, the Twitter account @RabbiEBrand has been deleted.

39.     One tweet from November 21, 2020 was captured prior to the deletion of the account. Brand falsely claimed that ten of Leifer's colleagues from his prior place of employment confirmed the bogus allegations. The screenshot of that tweet has been attached as Exhibit No. 8.

40.     Rabbi Eliezer Brand is a known individual. Eliezer Brand was the owner of the @RabbiEBrand Twitter account. Brand is not a defendant in this matter because the referenced defamatory tweets occurred outside of the statute of limitations for defamation.

41.     Leifer held his previous job with Preferred Home Care of New York for close to a decade. After these false allegations occurred, Leifer discussed these allegations with his prior employer, and his employer confirmed they had not spoken to anyone about his employment or his eventual choice to leave the company.

42.     Another individual, Yochonon Donn, tweeted that Mr. Leifer's last place of employment terminated him because of "metoo" allegations using the Twitter account @Yochidonn in December of 2021. Donn is not a defendant in this matter because his identity is known and he has been served a cease and desist demand letter with which he has complied to date. The cease and desist demand letter is attached as Exhibit No. 9.

43.     In addition to defamatory tweets, Leifer has received threatening tweets. The account **@ConservativeYi1** tweeted a picture of a passage in the Talmud. The highlighted passage is from Bava Metzia 59a and translates to "One who engages in intercourse with a married woman before witnesses and with forewarning, his death is by strangulation." The tweet suggests that this type of punishment is appropriate for Leifer. The tweet is attached as Exhibit No. 10.

44.     @ConservativeYi1 is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

45.     After the initial defamatory tweet in January 2021, further Twitter accounts have continued to circulate and amplify the libelous allegation that Leifer harassed women at his prior place of employment and was terminated due to that harassment. These tweets have come from both known and unknown individuals, but mostly anonymous accounts.

46.     Examples of additional accounts that have circulated, discussed, or in other ways perpetuated the false, defamatory allegations include @Rabbi_Rosenthal, **@Frauholla3**, **@BaruchSilverst1**, and **@yafered**. Examples of these tweets are included as Exhibit Nos. 11, 12.

47.     Upon information and belief, most of these accounts are also anonymous and are unnamed defendants in this complaint. @Rabbi_Rosenthal is an account owned by an individual named David Rosenthal.

48.     Another anonymous account, **@ShuIimLeifer**, attempted to impersonate Leifer's twitter account, @ShulimLeifer, using a capital "I" to replace the lowercase "l" in Leifer's first name. This impersonation account uses the same image of Leifer as a child that Leifer's own Twitter account previously used. Examples of the online impersonation are included as Exhibit Nos. 13–16.

49.     @ShuIimLeifer is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

50.     In addition to the false, libelous, and defamatory statements described above, upon information and belief, unknown persons have made fraudulent and unauthorized access to Leifer's personal social media accounts, specifically his Twitter account. This unauthorized access to Leifer's Twitter account would grant access to all of Leifer's private direct messages

with other activists and vulnerable members of the Hasidic community with whom he communicates. Leifer frequently and consistently utilizes the instant messaging feature of Twitter and is sent 'leads' by vulnerable members of the community through this messaging tool. Leifer considers Twitter, and his ability to reach and contact members of the Hasidic community, the most important tool of his advocacy.

51.     The access records of Leifer's Twitter account indicate continuous and persistent access via an unknown, third-party Slack[9] platform account. Leifer consistently accesses his Twitter account via his iPhone and is unaware of why any Slack access would have occurred. Screenshots of Leifer's Twitter access history are included as Exhibit No. 17.

52.     Threat actors have commonly used Slack to gain fraudulent and unauthorized access to personal social media accounts.[10]

53.     The parties behind the unauthorized account access of Leifer's Twitter account are unnamed defendants (John Does) in this complaint.

54.     Leifer has attempted to stop the defamation by contacting Twitter Support and by serving the known individuals with Cease and Desist Demand Letters. Leifer, without the support of Twitter, has not been able to act against the anonymous accounts that continue to spread defamatory statements.

55.     The continued circulation of the defamatory allegations about Leifer affect his employment, activism and family life. At a minimum, the allegations call into question Leifer's character, which affects his employability and his standing in the Hasidic Community of Brooklyn, where he had already faced ostracization because of his activism. The persistent false allegations that bogus and anonymous social media accounts continue to levy against

---

[9] The "Slack" platform is a workplace communication tool. Slack is an instant messaging system (similar to text messages), but allows for group chats, document sharing, and other add-ins that benefit workplace communication. See https://slack.com/.
[10] See https://mashable.com/article/slack-key-to-twitter-hack and https://www.haekka.com/blog/slack-phishing.

Leifer prevent him and his family from feeling safe within their own community.

56.     Activists within the Hasidic Community have been labeled dissidents and subsequently been the targets of violent attacks, and violence and intimidation have been used in the Hasidic Community of Brooklyn to silence activism. For example, an individual named Aron Rottenberg was the victim of arson after praying outside of the designated community[11] and Rabbi Nuchem Rosenberg had chemicals thrown in his face because of his advocacy against child sexual abuse.[12]

57.     Leifer fears that if the defamatory statements are not stopped on Twitter both he and his family may be in danger of violent attacks.

58.     Leifer's employability has been affected by the defamatory allegations. The defamatory tweets have made Leifer unemployable in the Hasidic Community, especially when compounded with his lack of employment prospects that his limited education affords him. Leifer relied on his reputation in his career to find success in the field of home healthcare, which is heavily represented by the Hasidic community. But now Leifer is unable to find employment because of the attacks on his character.

59.     One of Leifer's former employers even received frantic phone calls from community members begging for tweets to be removed from Twitter while he was employed.

60.     Leifer has lost two jobs within the last few years. Each of these jobs were lost during a socially polarized time where Leifer's activism was vivid. Each job was lost abruptly with no indication of poor performance. Upon information and belief, Leifer lost these jobs due to defamation and pressure from within the Hasidic community. Leifer currently remains unemployed and has struggled to secure employment.

---

[11] See https://www.cbsnews.com/newyork/news/new-square-arson-victim-blames-attack-on-communitys-religious-intolerance/.
[12] See https://www.nytimes.com/2012/12/12/nyregion/rabbi-nuchem-rosenberg-doused-maybe-with-bleach-in-williamsburg.html?referringSource=articleShare.

## COUNT I:
## <u>DEFAMATION PER SE</u>

61.     Leifer hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

62.     All of the statements made by Does and pleaded herein are false as to Leifer.

63.     All of the statements made by Does and pleaded herein were made with malice, or in the alternative, gross negligence.

64.     The Does published these statements on Twitter, without authorization from Leifer, where everyone in the world has access to the statements, and specifically intended for the statements to reach the Brooklyn Hasidic Community of which Leifer is a member and through which Leifer earns a living.

65.     Upon information and belief, the Does intentionally disseminated the Defamatory Articles in order to create as much awareness about and damage to Leifer within his community.

66.     The publication of the Defamatory Articles has already caused Leifer irreparable harm in that Leifer has lost his job and lacks employability given the false attack on his character within the community where he both lives and works.

67.     The Does are aware that the statements are false, or at a minimum did not have any reasonable basis to believe that the statements are true.

68.     Upon information and belief, the Does had no basis to make the Defamatory Articles on Twitter or elsewhere and invented the allegations based on their own animus towards Leifer's advocacy within the Hasidic Community.

69.     Upon information and belief, the Does conducted no independent research on whether their claims were in fact true.

70.     The Does' claims being made public in the Hasidic Community have harmed,

- 13 -

and will continue to harm, Leifer based on the false belief that he has harassed women.

71.     As long as the Does are permitted to continue perpetuating these false allegations, Leifer will be harmed through the continued inability to be an accepted member of the Hasidic Community, affecting Leifer's employability and lifestyle.

72.     The Does' statements were made in a grossly irresponsible manner by which the Does knew, or reasonably should have known, that their statements were false and would inflict injury on Leifer in his profession.

**COUNT II:**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**

73.     Leifer hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

74.     The Does wrongfully and intentionally, without authority, accessed a protected computer in order to gain access to Leifer's personal social media accounts.

75.     These actions were unauthorized because Leifer never provided his social media account information to any other individual or provided permission to access his social media to any other individual.

76.     As a direct and proximate result of Does' conduct in violation of the CFAA, Leifer has suffered and will continue to suffer damages in excess of $5,000.

77.     Upon information and belief, Does' conduct will continue unless enjoined by this Court.

**COUNT III:**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

78.     Leifer hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

79.     The Does intentionally published specific unfounded allegations affecting both

Leifer's professional and personal life.

80.     The Does had no basis or knowledge to support their publications and published the defamatory material with the goal of maligning Leifer. In fact, knowingly "leaking" false information about another person often only has the goal of maligning that person's character.

81.     Upon information and belief, the Does are aware of other violent attacks against members of the Hasidic Community identified as dissidents or advocates against the traditions of the Hasidic Community.

82.     The Does understood the nature of the Defamatory Articles would lead to employability concerns, familial concerns, other issues leading to emotional distress, and potentially violent attacks.

83.     The Does' retaliatory actions were made in an effort to humiliate and undermine Leifer and to punish him personally and professionally as a result of his advocacy.

84.     In publishing the Defamatory Articles, the Does knew, or in the exercise of reasonable behavior should have known, that their actions were intolerable.

85.     In publishing the Defamatory Articles, the Does acted intentionally and with knowledge that their punitive actions would cause severe emotional distress to Leifer.

86.     The Does' actions have caused and continue to cause Leifer severe emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants and each of them, jointly and severally, as follows:

a.      Awarding Plaintiff an injunction against Defendants;

b.      Awarding Plaintiff actual damages for past lost wages and benefits and future lost wages and benefits, in an amount to be determined at trial, but that would be in excess of $75,000;

- 15

c.      Awarding Plaintiff damages for emotional distress and humiliation in an
        amount to be determined at trial;

d.      Awarding Plaintiff the costs of this action together with reasonable attorney's fees;

e.      Awarding Plaintiff pre- and post-judgment interest in the statutory amount; and

f.      Such other and further relief as the Court deems equitable, just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues
triable as of right to a jury.


March 29, 2022                          Respectfully submitted,


                                        */s/ Preetha Chakrabarti*
                                        Alexander J. Urbelis
                                        AUrbelis@crowell.com
                                        Preetha Chakrabarti
                                        PChakrabarti@crowell.com
                                        **CROWELL & MORING LLP**
                                        590 Madison Avenue, 20th Floor
                                        New York, NY 10022
                                        Telephone: (212) 223-4000
                                        Facsimile: (212) 223-4134


                                        *Attorneys for Plaintiff*
                                        *Shulim Leifer*

# EXHIBIT 1

# SHULIM LEIFER

1843 Ryder Street
Brooklyn, New York 11234
shulimleifer@yahoo.com
+1 347 661 7151

Skilled administrator of home health agencies, with experience in all aspects of operations, marketing, finance, human resources and administration of home health care.

## EXPERIENCE

**PARK AVENUE HOME CARE**                                  Brooklyn, NY ♦ 2019-2021
*Director*

Oversaw all aspects of the operation and administration of a boutique private home care agency with field staff of 150 health professionals delivering nursing, advanced nursing, high tech infusion nursing, pediatric TBI, geriatric care, physical therapy, occupational therapy, home health aide, and concierge services. Responsibilities covered all aspects of operations (dispatching of care providers and quality control), human resources, billing, compliance and administration.

**NURSING PERSONNEL HOME CARE**                            Brooklyn, NY ♦ 2019-2021
*Strategic Development Officer*

Formulated and implemented strategic development plans for traditional home care agency with operations throughout the Metropolitan New York City area, and Suffolk, Nassau and Westchester counties with a field staff of 2,500.

**PREFERRED HOME CARE OF NEW YORK**                        Brooklyn, NY ♦ 2010-2018
*Executive Director, Operations (2016-18)*
*Director, Aide Services (2013-16)*
*Director, Intake (2012-13)*
*Marketing Account Manager (2010-12)*

Extensive experience in all aspects of account management, intake, aide services and operations of one of New York State's largest licensed home care agencies with 250 on-site coordinators and case managers, 7,000 certified aides, operating in 14 counties across New York State in 9 locations.

**CHINA GLATT**                                            Brooklyn, NY ♦ 2006-2010
*General Manager*

Oversaw all aspects of the operation of landmark Brooklyn business and leisure Chinese dining establishment. Operations covered in-house dining at 100-seat restaurant, event planning, party packages and private party room planning.

## LANGUAGES

Fluent in Yiddish

Basic Hebrew

# EXHIBIT 2



Kol Yisrael صوت إسرائيل @KolYisrael · Jan 6, 2021

Shulim,

Starting to call people names, should we discuss here why you were fired from your job?

💬 3     ⟲     ♡     ↥

Yochonon Donn ✔ @Yochidonn · Jan 6, 2021

Why was he fired?

💬 2     ⟲     ♡     ↥

Kol Yisrael صوت إسرائيل @KolYisrael · Jan 6, 2021

"געקושט די בעק ציצית ביי ברוך שאמר"

violations #metoo 💃.

💬 2     ⟲     ♡     ↥

Yochonon Donn ✔
@Yochidonn

Replying to @KolYisrael @ShulimLeifer and 2 others

Him? The great moralizer? The Nadvorna einikel??

9:58 PM · Jan 6, 2021 · Twitter for Android

# EXHIBIT 3



Kol Yisrael صوت إسرائيل @KolYisrael · Jan 6, 2021 ···

"געקושט די בעק ציצית ביי ברוך שאמר"

violations #metoo 💁🏻‍♀️.

💬 2      🔁      ♡      ↑

**Shulim Leifer**
@ShulimLeifer                                                    ···

Replying to @KolYisrael @Yochidonn and 2 others

😂😂 שקר וכזב

Translated from Hebrew by Google

😂😂 Lie and falsehood

10:00 PM · Jan 6, 2021 · Twitter for iPhone

💬      🔁      ♡      ↑

Tweet your reply                                    **Reply**

Kol Yisrael صوت إسرائيل @KolYisrael · Jan 6, 2021 ···
Replying to @ShulimLeifer @Yochidonn and 2 others
This is no laughing matter.
Denial is the initial response of everyone exposed for such matters. Should
we get into the gory details? Name names?

💬 1      🔁      ♡      ↑

**Shulim Leifer** @ShulimLeifer · Jan 6, 2021      ···
Yes please.

💬      🔁      ♡      ↑

# EXHIBIT 4



**Erpsmosh**
@erpsmosh

Replying to @FrumTrumpsHate @ShulimLeifer and @jewishstudent1

Here is advice for life. Try to think on ur own dont just repeat things cuz it looks cool and in style . Or else ull look like shulim liefer u c he was fired from a job for harrasing a woman . Y ? Cuz in his desperation to look with it and cool he thought u have to harrass woman

9:07 AM · May 26, 2021 · Twitter Web App

# EXHIBIT 5

Terry Kleinman @KleinMatt1 · Jun 24, 2021
Replying to @ShulimLeifer and @Yochidonn
You are lying. You were a "fired" because you behaved like a animal.

💬 1          ↻          ♡          ⬆

Terry Kleinman @KleinMatt1 · Jun 24, 2021
Replying to @ShulimLeifer and @Yochidonn
Leifer dumbhead. I'm told you have lots of skeletons and you are a scumbag

💬 1          ↻          ♡          ⬆

Terry Kleinman @KleinMatt1 · Jun 23, 2021
Replying to @ShulimLeifer
You were fired from a home care agency

💬 1          ↻          ♡          ⬆

# EXHIBIT 6



**Oppy**
@Ralphoppy

···

Replying to @yaeltime @beawebwriter and 3 others

Pls before u defend shulim liefer go check his past y he was fired 2 jobs in 2 years . Mayb speak to the women who filed the complaints. Believe what u want abt education but shulim liefer shud not be ur guy

11:45 PM · Jun 23, 2021 · Twitter Web App

# EXHIBIT 7



**Yanky Stern** @YankyStern4 · 7/29/21   ···
Hahhahahaha. So one can never compare anything affiliated with jews with communist tactics? If the comparison is apt ... and the best part is you are @ the intellectual lightweight shulimleifer who has allegedly sexually harassed coworkers..

💬 1          ⇄          ♡          ⬆

**DovBear -** 🍿🥠😳 **contra...** · 7/29/21   ···
Keep defending the known anti semite.

Keep defending his attempt to mock and discredit efforts to fight anti semitism.

Maybe he'll give you a better seat on the train one day

💬 1          ⇄          ♡ 2          ⬆

**Yanky Stern** @YankyStern4 · 7/29/21   ···
Keep @ sexual harassing lowlifes and attributing bad motives where none exist. It's sad who u associate with. I guess in the name of progressivism any "frum" jew is good for u

💬 1          ⇄          ♡          ⬆

**DovBear -** 🍿🥠😳 **contra...** · 7/29/21   ···
I really have no idea what you are talking about. Its news to me that he harrassed anyone, and I am certainly not going to accept the word of some rando on twitter.

💬          ⇄          ♡          ⬆

Case 3:22-cv-48035-BSK Document 1-1 Filed 01/21/22 Page 39 of 76 PageID #: 79

# EXHIBIT 8



**Rabbi Eliezer Brand**
@RabbiEBrand

Replying to @ShulimLeifer @mordygold and 7 others

Your ignorance is showing. If it's a lie it's not loshon hora. Also more than ten ppl at preferred home care confirmed this. So it's not loshon hora either because it's apei tlasa. Lastly I'm a freelancer. I don't work for Ami. Sit down little biy

9:58 PM · 11/21/20 · Twitter for Android

   

# EXHIBIT 9



590 Madison Avenue, 20th Floor, New York, NY 10022 ▪ p212.223.4000 ▪ f212.223.4134

**Alexander J. Urbelis**
**(212) 895-4254**
**AUrbelis@crowell.com**

December 27, 2021

**Via E-mail & Certified Mail**

Mr. Yochonon Donn
143 Webster Avenue
Brooklyn, New York 11230

**Re:     Cease and Desist Demand**

Dear Mr. Donn:

This law firm represents Mr. Shulim Leifer. It has come to my attention that you have been publicly posting defamatory and libelous content concerning Mr. Leifer on social media.

Specifically, on December 20, at 10:53:04 PM (ET), using your verified Twitter account @Yochidonn, you wrote that Mr. Leifer's last place of employment terminated him because of "metoo" allegations. That statement is utterly false and unfounded, is published without privilege or authorization, and is damaging to Mr. Leifer's reputation in his profession and in the community. Mr. Leifer is a well-known and outspoken activist as well as a champion of the cause of educational improvement within Charedi schools. As you are well aware, Mr. Leifer has spent many years building his reputation as a man of great moral character, which your false and defamatory allegation has impugned and is continuing to impugn.

I demand that you (i) immediately cease and desist from making further false statements about Mr. Leifer, (ii) remove the above post from Twitter without delay, and (iii) preserve all documents, records, and communications concerning Mr. Leifer (and suspend any automatic removal or deletion or such records) while Mr. Leifer considers further legal action.

Please provide your assurance by **December 31, 2021** that you will comply with these demands.

Please further note, however, that nothing contained in or omitted from this letter is or shall be deemed an admission of any fact, or a waiver or limitation of any of our client's rights or remedies, equitable or otherwise, all of which Mr. Leifer specifically retains and reserves.

I thank you for your prompt attention to this matter and remain available to discuss.

Sincerely,

Alexander J. Urbelis

# EXHIBIT 10



**Conservative Yidel**
@ConservativeYi1

...

Special for Jew hater @ShulimLeifer



# EXHIBIT 11



← **Tweet**

**Shulim Leifer** @ShulimLeifer · Jan 5     •••
The irony of making a living by doing brand protection & countering activism on *checks notes* Twitter, is that you end up needing to TWEET: "tWiTtEr iSn'T aKsHuLLy iMpOrTaNt".

*chef's kiss* perfection

> 🟢 **Tova Herskovitz** @tovaherskovitz · Jan 4
> Replying to @ladyofthepond
> I believe in advocacy and change as much as you do....but the power structure of our community is such that effecting change doesn't happen by tweeting.

💬 2     🔁 1     ♡ 18     ⬆

**eden** @edenwerba · Jan 5     •••
🫤

💬 1     🔁     ♡     ⬆

**David Rosenthal**     •••
@Rabbi_Rosenthal

Replying to @edenwerba and @ShulimLeifer

Shulim Leifer would like you to know that it is OK to mock women when they don't share your worldview.

11:23 PM · Jan 5, 2022 · Twitter Web App

# EXHIBIT 12



**YAFERED**
@Yafered

Replying to @ShulimLeifer

even though there are more people who accuse @ShulimLeifer of sexual assault than openly support @yaffedorg we can win this war!

We can force our opinion on the Jewish community

7:53 PM · 12/21/21 · Twitter Web App

# EXHIBIT 13



**Shulim Leifer**
@ShulimLeifer

···

Please @TwitterSupport. This account is exposing the fact that I am the world's greatest slimeball. I need a blue check now. Since I'm out of work maybe I can grift with that. Or maybe @nmoster will also pay 76k from @yaffedorg coffers. twitter.com/ShulimLeifer/s…

> You're unable to view this Tweet because this account owner limits who can view their Tweets. Learn more

9:58 PM · Jan 4, 2021 · Twitter for Android

**1 Like**

# EXHIBIT 14



**rayne** @trayne_wreck · Jan 4, 2021 ...

.@ShulimLeifer is being harrassed by fake accounts and now there's a fake account pretending to be him, I need you all to report it asap and then go show his real account some love and solidarity.

---

**Shulim Leifer** @ShulimLeifer · Jan 4, 2021

Also please beware if you see tweets today they might not be from me there's an account posing as me and spamming my conversations. Same exact handle (how is this possible @TwitterSupport).

Please all report as imposter account thanks 🙏

twitter.com/shuiimleifer?s...

Show this thread



💬 2        🔁 1        ♡ 9        ⬆️

---



**Shulim Leifer** @ShulimLeifer · Jan 5, 2021 ...

Thank you so much. It is good to know that some people care...

💬        🔁        ♡        ⬆️

# EXHIBIT 15



**Shulim Leifer** @ShulimLeifer · Jan 4, 2021

Also please beware if you see tweets today they might not be from me there's an account posing as me and spamming my conversations. Same exact handle (how is this possible @TwitterSupport).

Please all report as imposter account thanks 🙏

twitter.com/shuiimleifer?s...

💬 2            🔁 3            ♡ 8            ⬆

**בן סורר ומורה** @BenSorer · Jan 4, 2021

It's not the same handle. His handle is shuiimLeifer but he used a capital letter for the first I do it looks like shulim

💬 2            🔁            ♡ 1            ⬆

**Shulim Leifer**
@ShulimLeifer

Replying to @BenSorer @ShulimLeifer and @TwitterSupport

Someone else mentioned that. These guys are really after me...

11:08 PM · Jan 4, 2021 · Twitter for Android

# EXHIBIT 16



← **Shulim Leifer**
26 Tweets

**Shulim Leifer**
@ShulimLeifer

Pronounced ''Lifer''. Husband. Father of 3. Chasidish Jew & Avid Human. Accidental activist. Autodidact-be kind. Field:Healthcare. Tweets are mine alone. He/Him

⊙ Pale Blue Dot    𝒮 MassageParlorPig.com    🗓 Joined January 2021

# EXHIBIT 17





# Exhibit 3

 Crowell

**Alexander J. Urbelis**
AUrbelis@crowell.com
+1.212.895.4254
**Preetha Chakrabarti**
PChakrabarti@crowell.com
+1.212.895.4327

Crowell & Moring LLP
590 Madison Avenue
20th Floor
New York, NY 10022
+1.212.233.4000  main
+1.212.233.4134  fax

May 11, 2022

VIA ECF

Magistrate Judge Sanket J. Bulsara
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:     **Shulim Leifer v. John Does 1-9, Civil Action No. 22-CV-1770-WFK-SJB**

Dear Magistrate Judge Bulsara:

This law firm represents Plaintiff Shulim Leifer ("Plaintiff") in the above-referenced matter.  We write pursuant to Federal Rule of Civil Procedure 26(d)(1) and your Individual Practices III.B and IV.B to request an Order to serve a third-party subpoena on Twitter, Inc. ("Twitter") to obtain information sufficient to identify the John Doe defendants and to effect service so that we may have a meaningful initial pre-trial conference with the Court.  Attached as Exhibit 1 is a copy of the subpoena proposed to be served on Twitter.

Because this matter involves the publication of defamatory materials and potential violations of the Computer Fraud and Abuse Act by unidentified third parties, it is necessary for us to ascertain the identity of these parties prior to amending and serving the Complaint.  Our proposed subpoena requests identifying information for the accounts enumerated in the Complaint.  Dkt. No. 5 at ¶¶ 30-49.  While it is possible that this may be the only subpoena we require to identify the defendants, we believe that it is likely that the defendants furnished Twitter with false account information and that, therefore, Twitter may only be able to provide Internet Protocol addresses ("IP addresses") for the unidentified parties. If only IP addresses are provided, this subpoena will be followed by a second subpoena addressed to the relevant Internet service provider ("ISP").  ISPs are responsible for assigning unique IP addresses to their customers and can provide information about which customer had which unique IP address at the time that the defendants published the defamatory tweets at issue.

Under the Federal Rules, a party may not seek discovery from any source prior to a Rule 26(f) conference.  However, the Federal Rules provide that a party may engage in discovery before the Rule 26(f) conference if authorized by a court order.  Fed. R. Civ. P. 26(d)(1).  When considering whether to grant a motion for expedited discovery prior to a Rule 26(f) conference, courts generally apply a "flexible standard of reasonableness and good cause."  *Strike 3 Holdings, LLC v. Doe*, 2019 WL 1837447, *2 (S.D.N.Y. Apr. 10, 2019) (quoting *Digital Sin. Inc. v. John Does 1–176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012)).

 Crowell

Magistrate Judge Sanket J. Bulsara
May 11, 2022
Page 2

The Second Circuit has identified the "principal factors" to consider when determining whether to allow a party to issue a subpoena under Rule 45 prior to holding a Rule 26(f) conference, including: (1) the plaintiff's ability to make out a prima facie case, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the information sought in the subpoena, (4) the need for the information sought in order to advance the claim, and (5) the defendant's expectation of privacy. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entertainment Inc. v. Does 1–40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) (denying defendant's request to quash a Rule 45 subpoena because the district court found that plaintiff had satisfied the principal factors for obtaining expedited discovery)).

As to the first factor, Plaintiff has sufficiently pleaded three causes of action: (i) defamation per se; (ii) violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and (iii) intentional infliction of emotional distress. Dkt. No. 5 at ¶¶ 61-86.

As to the second factor, Plaintiff has provided the Court with a highly-specific subpoena directed to the only entity known to possess information necessary to determine the identity of the defendant(s). *See* Exhibit 1. Plaintiff only seeks information necessary to identify anonymous individuals that have published defamatory tweets and/or violated the Computer Fraud and Abuse Act. Plaintiff is not seeking access to the content of any of the defendants' communications. As noted, we believe that a second subpoena to an ISP(s) may be required.

As to the third factor, Twitter is the only entity with the ability to provide data that can assist Plaintiff with the identification of the defendant(s). This is because there is no other entity aside from Twitter that has access to the account information and log files that contain the IP addresses and other metadata associated with the tweets at issue in this matter. Indeed, Twitter's privacy policy prescribes a limited number of circumstances under which Twitter will share and/or disclose user account data, one of which is to respond to "legal process."[1]

As to the fourth factor, pre-conference discovery is preferred where, as here, "without granting [p]laintiff's request, the defendants cannot be identified or served and the litigation cannot proceed." *Digital Sin*, 279 F.R.D. at 242. Pre-conference discovery is the only procedure for Plaintiff to seek legal recourse.

As to the fifth factor, any expectation of privacy is outweighed by Plaintiff's need to identify Defendant(s). Moreover, Twitter's privacy policy informs users that Twitter can disclose account data when required by law and to respond to legal process. The very nature of social media usage in the twenty-first century limits expectations of privacy, and defamers should not expect to shield themselves from recourse by choosing to defame anonymously.

---

[1] See *Privacy Policy*, TWITTER at Sec. 3.3 (Aug. 19, 2021), https://twitter.com/en/privacy.

 Crowell

Accordingly, reasonableness and good cause exist to allow Plaintiff to conduct limited discovery in advance of any Rule 26(f) conference at which no defendants would appear.

We respectfully request that the Court issue an order permitting Plaintiff to serve the attached subpoena on Twitter. *See* Exhibit 1. We remain available at the Court's convenience to conference this matter. I thank you in advance for your consideration of this letter motion.

Respectfully submitted,

Alexander J. Urbelis

AJU/ck
Attachment

cc: Preetha Chakrabarti, Esq.

# Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SHULIM LEIFER,

                       Plaintiff,

        -against-                         **ORDER**
                                             22-CV-1770-WFK-SJB

JOHN DOES 1-9,

                       Defendants.
----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

      This action was commenced by Plaintiff Shulim Leifer ("Leifer") against unnamed defendants (the "Doe Defendants"), who have not been identified. The Doe Defendants allegedly made defamatory postings about Leifer on Twitter, made fraudulent and unauthorized access to Leifer's social media accounts, and committed intentional infliction of emotional distress. (Compl. dated Mar. 29, 2022 ("Compl."), Dkt. No. 5 ¶¶ 1–2; 30–50). Leifer has plead three causes of action: (i) defamation per se; (ii) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and (iii) intentional infliction of emotional distress. (*Id.* ¶¶ 61–86). Presently before the Court is a motion for expedited discovery under Federal Rule of Civil Procedure 26(d)(1), seeking permission to serve a subpoena upon Twitter, Inc., ("Twitter") to obtain the true identities of the Doe Defendants. The Court concludes that good cause exists to allow for the expedited discovery. Accordingly:

      **IT IS ORDERED** that Leifer may serve a subpoena in compliance with Fed. R. Civ. P. 45 (the "Subpoena") on Twitter to obtain identifying information of the Doe Defendants associated with the accounts identified in the Complaint and who are alleged to have published defamatory tweets and/or violated the Computer Fraud and Abuse Act.

(*See* Compl. ¶¶ 30–49). Leifer shall not seek or obtain the content of the Doe Defendants' communications, or the Doe Defendants' internet service providers ("ISPs"), without a further Court order. The Subpoena shall have a copy of this Order attached; and

    **IT IS FURTHER ORDERED** that Twitter will have a period of 30 days to file any motions with this Court contesting the Subpoena (including a motion to quash or modify the Subpoena). Additionally, if Twitter files a motion to quash the Subpoena, Twitter should not turn over any information to Leifer until the issues set forth in the motion have been addressed and the Court issues an Order instructing Twitter to resume in turning over the requested discovery; and

    **IT IS FURTHER ORDERED** that if the 30-day period within which the Doe Defendants may contest or otherwise move with respect to a Subpoena lapses without such action, Twitter will have a period of 10 days to produce the information responsive to the Subpoena to Leifer; and

    **IT IS FURTHER ORDERED** that Twitter, upon receiving a Subpoena shall confer with Leifer, and shall not assess any charge in advance of providing the information requested therein. If Twitter elects to charge for the costs of production, it shall provide a billing summary and cost report to Leifer; and

    **IT IS FURTHER ORDERED** that any information ultimately disclosed to Leifer in response to the Subpoena may be used by Leifer solely for the purpose of protecting his rights as set forth in the Complaint.

                      SO ORDERED.

                      */s/Sanket J. Bulsara*   May 17, 2022
                      SANKET J. BULSARA
                      United States Magistrate Judge

Brooklyn, New York

# Exhibit 5

David W. Shapiro (NY SBN 2054054)
dshapiro@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Nonparty

TWITTER, INC.

Additional individuals listed on signature page.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHULIM LEIFER. <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-9, <br><br><br> Defendants. | Civil Action No: 22-cv-1770-WFK-SJB <br><br> **PLAINTIFF SHULIM LEIFER AND NONPARTY TWITTER, INC.'S SECOND STIPULATION TO EXTEND TIME FOR TWITTER, INC., TO FILE ANY MOTION CONTESTING THE SUBPOENA SERVED MAY 26, 2022** |

Plaintiff Shulim Leifer and nonparty Twitter, Inc. ("Twitter"), by and through their undersigned counsel, hereby stipulate and agree that Twitter shall have through and including July 11, 2022, to file any motions contesting the subpoena served on Twitter on May 26, 2022. This deadline was previously extended to June 27, 2022. *See* Dkts. 8, 9. This extension does not, to the best of Plaintiff's or Twitter's knowledge, affect any other scheduled dates.

IT IS SO STIPULATED.

1

Dated: June 24, 2022

Respectfully submitted,
THE NORTON LAW FIRM PC

By: */s/ David W. Shapiro*
David W. Shapiro
Attorneys for Nonparty
TWITTER, INC.

Dated: June 24, 2022

Respectfully submitted,
CROWELL & MORING LLP

By: */s/ Alexander Urbelis*
Alexander Urbelis
Attorneys for Plaintiff
SHULIM LEIFER

**IT IS SO ORDERED.**

Dated: June 26, 2022

*/s/ Sanket J. Bulsara* June 26, 2022
HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE
Brooklyn, New York

2

Exhibit 6



Gil Walton
gwalton@nortonlaw.com
(510) 906-4907

July 1, 2022

**VIA E-MAIL:**

Alexander Urbelis
Crowell & Moring LLP
590 Madison Avenue
20th Floor
New York, New York 10022
aurbelis@crowell.com

     Re:    **Third-Party Subpoena to Twitter, Inc., in connection with *Does 1-9 v. Leifer*, No. 1:22-cv-01770-WFK-SJB (E.D.N.Y.)**

Dear Mr. Urbelis,

     I write on behalf of Twitter, Inc. ("Twitter") in response to your subpoena, dated May 9, 2022, and served May 26, 2022 (the "Subpoena"). Because we were unable to resolve Twitter's objections to the Subpoena through the meet-and-confer process ordered by the Court, *see* Dkt. 7 at 2, Twitter hereby objects to the production of any documents in response to the Subpoena for the reasons set forth below and described in our June 13, June 24, and June 30, 2022 meetings.

     ***First***, the Eastern District of New York lacks personal jurisdiction over Twitter. A district court must have personal jurisdiction over a nonparty to compel it to comply with a discovery request issued pursuant to Rule 45. *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014). The Eastern District of New York may exercise personal jurisdiction over Twitter only to the extent permitted by New York's long arm statute and the requirements of constitutional due process. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). This can be done in one of two ways: through general jurisdiction, or through specific jurisdiction. *Id.* at 208-209. For either type of jurisdiction, "the plaintiff bears the burden of establishing that the court has [personal] jurisdiction." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).

     Twitter is not subject to general jurisdiction in New York, as Twitter is not incorporated in New York and does not have its principal place of business there. *Al -Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 125 (S.D.N.Y. 2021). And Twitter is not subject to specific jurisdiction in New York, either, as Mr. Leifer's claims do not "arise from" Twitter's business activity in New York. The conduct described in Mr. Leifer's Complaint describes the conduct of unknown defendants, not Twitter. Specific jurisdiction may not be based on the "unilateral activity" of

July 1, 2022
Page 2

others.  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Trehern v. OMI Corp.*, No. 98 CIV. 0242 RWS, 1999 WL 47303, at *6 (S.D.N.Y. Feb. 1, 1999). Nor is it enough to confer jurisdiction for Mr. Leifer to say that he viewed Twitter's website while in New York.  As a court in the Eastern District of New York recently noted, "[c]ourts in this Circuit have held that a New York resident viewing the website of an out-of-state defendant, absent more, is not enough to establish personal jurisdiction over the defendant." *Katz v. Wanderstay Hotels, LLC*, No. 19 CV 3615 (RRM)(LB), 2021 WL 1093169, at *4 (E.D.N.Y. Mar. 4, 2021*), report and recommendation adopted*, No. 19CV3615RRMLB, 2021 WL 1091907 (E.D.N.Y. Mar. 22, 2021) (collecting cases).  Further, "mere injury to a forum resident is not a sufficient connection to the forum" to establish personal jurisdiction, and thus Mr. Leifer's alleged injury in New York is not enough to confer specific jurisdiction over Twitter, either. *Walden*, 571 U.S. at 290; *see also U.S. Bank Nat'l Ass'n*, 916 F.3d at 151.  As a result, there is neither general nor specific personal jurisdiction over Twitter in the Eastern District of New York.  *See Al -Ahmed*, 553 F. Supp. 3d at 125-28 (holding that there was no personal jurisdiction over Twitter in New York).

    ***Second***, the Eastern District of New York does not have jurisdiction to decide a motion to quash the Subpoena, a motion to modify the Subpoena, or a motion to compel compliance with the Subpoena.  Subpoena-related motions must be heard by the court where compliance is required.  *See* Fed. R. Civ. P. 45(c), (d).  And subpoenas commanding production of documents are limited in their geographic scope: Federal Rule of Civil Procedure 45(c)(2)(A) limits any subpoena commanding production of documents to "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." For corporations, the proper place of compliance for document subpoenas is the corporation's principal place of business.  *Nicolosi v. BRG Sports, Inc.*, 16 CV 2910 (SJ) (CLP), 2019 WL 8158470, at *2 (E.D.N.Y. Dec. 23, 2019); *Burnett v. Wahlburgers Franchising LLC*, No. 16CV4602WFKCLP, 2018 WL 10466827, at *2 (E.D.N.Y. Oct. 4, 2018) ("Therefore, the proper forum for the motion to compel would be in the district in California where the nonparty's headquarters are located, not where the files are to be produced."); *see also Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982, 984 (N.D. Cal. 2015) (noting that there is "no question" that the proper district to hear a motion to compel compliance with a Rule 45 nonparty subpoena against Twitter is in the Northern District of California, where Twitter is headquartered); *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (collecting cases and holding that the proper place of compliance is "where [non-party] Google is headquartered"); *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 1722481, at *3 (S.D. Fla. Apr. 15, 2015) (holding that district of compliance for Rule 45 subpoena is where nonparty corporation was headquartered).

    The Subpoena served on Twitter was issued from the Eastern District of New York but facially requests compliance in the Southern District of New York.  *See* Dkt. 6-1 (requesting compliance at "590 Madison Avenue, 20th Floor, New York, NY 10022").  So, taking the subpoena at face value, all subpoena-related motions would need to be filed in the Southern

July 1, 2022
Page 3

District of New York – where compliance is requested – and not the Eastern District.  *See* Fed.
R. Civ. P. 45(c), (d)(2), (d)(3).

But the geographic limitations of Rule 45 must be heeded, too.  Twitter's principal place
of business is in San Francisco, California, and courts in the Eastern District of New York have
held that even where a subpoena properly issued from the court overseeing the underlying
lawsuit, a nonparty corporation can only be "required to produce responsive documents within
100 miles of [the corporation's] business location."  *Nicolosi*, 2019 WL 8158470, at *2 (holding
that a motion seeking to compel compliance with a nonparty subpoena should have been filed
within 100 miles of a nonparty's "principal place of business").  Indeed, a court in another
district has denied a motion to compel discovery that sought to have Twitter produce documents
at a location more than 100 miles away from San Francisco, California.  *Williams v. Camden
USA Inc.*, No. 3:19-CV-691-AJB-AHG, 2021 WL 5417516, at *1-2 (S.D. Cal. Nov. 19, 2021).
That Twitter maintains an office in New York is irrelevant to this inquiry.  *See, e.g.*, *Europlay*,
323 F.R.D. at 629 (stating that "despite Google having an office in Venice, the proper district to
hear a motion to compel is where Google is headquartered" and collecting cases).  As a result,
the Subpoena should have sought compliance in the Northern District of California, and all
Subpoena-related motions must be filed there.  For that reason, Twitter does not believe the
Eastern District of New York has jurisdiction to quash, modify, or compel compliance with the
Subpoena.

***Third***, the Court has not conducted the *Arista* analysis required to unmask the anonymous
Doe defendants, and Mr. Leifer cannot satisfy that test.[1]  The United States Supreme Court has
long recognized that "[a]n author's decision to remain anonymous, like other decisions
concerning omissions or additions to the content of a publication, is an aspect of the freedom of
speech protected by the First Amendment."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334,
342 (1995); *see also Talley v. California*, 362 U.S. 60, 64 (1960) ("Anonymous pamphlets,
leaflets, brochures and even books have played an important role in the progress of mankind.
Persecuted groups and sects from time to time throughout history have been able to criticize
oppressive practices and laws either anonymously or not at all.").  The protections of the First
Amendment also apply to anonymous speech on the internet.  *See In re Rule 45 Subpoena Issued
to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. 08-347 ARR MDG, 2010

---

[1] Because the proper forum for any Subpoena-related motions is the Northern District of California, it is Twitter's
position that the *Highfields* test should apply to the unmasking of the anonymous Doe defendants.  Under
*Highfields*, a court requires: (1) the plaintiff to adduce, without the aid of discovery, competent evidence addressing
all of the inferences of fact essential to support a prima facie case on all elements of a claim; and (2) if the plaintiff
succeeds, the court must then "assess and compare the magnitude of the harms that would be caused to the
competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant.  If, after such an
assessment, the court concludes that enforcing the subpoena would cause relatively little harm to the defendant's
First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy
serious wrongs, the court would deny the motion to quash."  *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d
969, 975-76 (N.D. Cal. 2005).  Mr. Leifer cannot satisfy the *Highfields* test, either.

July 1, 2022
Page 4

WL 2219343, at *7 (E.D.N.Y. Feb. 5, 2010), *report and recommendation adopted in part*, No. 08MC347 ARR MDG, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) (collecting cases).

      So, when reviewing requests to unmask anonymous speakers in the context of the motions to compel discovery or motions to quash, courts in the Second Circuit consider five factors: "(1) [the] concrete[ness of the plaintiff'[s] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)).  Here, Mr. Leifer fails to satisfy at least three of those factors: (1) he cannot establish a prima facie claim of actionable harm for any of his claims, (2) the Subpoena seeks more information than necessary to identify the anonymous defendants, and (3) the anonymous defendants' expectation of privacy is great in this case.  As a result, even if the Court had personal jurisdiction over Twitter and jurisdiction over any Subpoena-related motions, the Subpoena would be quashed on this ground.

      Based on the foregoing objections, Twitter will not be producing documents responsive to the Subpoena.  Twitter reserves all other objections to, or claims of privilege against, the production of documents pursuant to the Subpoena and reserves all further rights.

Sincerely,

Gil Walton
THE NORTON LAW FIRM, P.C.

# Exhibit 7

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT / EASTERN DISTRICT OF NEW YORK

_Index No.1:22-CV-01770-WFK-SJB_

**SHULIM LEIFER**

                          Plaintiff,

        -against-

**JOHN DOES 1-9**

                          Defendants.
---------------------------------------------------------------------

State Of New York, County of New York:
**DOMINIK PRZYBLO**
Being duly sworn, deposes and says that she is over the age of 18 years, is not a party to this action, and resides in the State of New York.

That on the **27**th day of **MAY 2022**, At: **1:25 PM**

At: **245 W 17**th **ST, NEW YORK, NY 10011**

Deponent served the: **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

Upon:  **TWITTER, INC.**

          **PERSONAL SERVICE ON A CORPORATION**
          A corporation, by delivering thereat a true copy to the employee **S. SIMS (CLERK)** personally, who stated, that she is the said individual to be _Authorized to Accept Service_ on behalf of **TWITTER, INC.**

          **DESCRIPTION** - Deponent describes the individual served or spoken to as follows:
          Sex: **FEMALE** Color: **BLACK** Hair: **BLACK** App. Age: **34** App. Ht: **5'6"** App. Wt.: **190 lbs.**
          Other identifying features:

          Sworn to before me this **27**TH
          day of **MAY, 2022**

                                                    _Dominik Przyblo_
                                                    DOMINIK PRZYBLO (206-9/83)

JOLANITYNA J. CAGNEY
Notary Public, State of New York
Reg. No. 01CA6101489
Qualified in New York County
Commission Expires June 14, 2024

                                        CLASSIC LEGAL SUPPORT, INC #2022186-DCA
                                        475 PARK AVE SOUTH, 30 FLOOR
                                        NEW YORK, NEW YORK 10016
                                        (212) 889-3200