FRED NORTON (CA SBN 224725)
fnorton@nortonlaw.com
GIL WALTON (CA SBN 324133)
gwalton@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Respondent

TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHULIM LEIFER, | Case No. 3:22-MC-80319-SK |
| Movant, | **RESPONDENT TWITTER, INC.'S OPPOSITION TO MOVANT SHULIM LEIFER'S MOTION TO COMPEL TWITTER, INC. TO RESPOND TO SUBPOENA** |
| v. | |
| TWITTER, INC., | |
| Respondent. | |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND .............................................................................. 2

III.   LEGAL STANDARD ........................................................................................ 3

IV.   ARGUMENT ..................................................................................................... 4

     A.   The Second Circuit's *Arista* Unmasking Test Is Inapplicable Here ...................................... 4

     B.   Even If *Arista* Applied, Leifer Has Not Met That Standard ................................. 5

          1.   Leifer has not established a *prima facie* case for defamation. ................................. 6

          2.   Leifer's need for the subpoenaed information does not outweigh the Doe defendants' expectation of privacy. ......................................................... 10

     C.   Leifer Has Not Satisfied The *Highfields* Test ................................................. 12

          1.   Leifer has not demonstrated a real evidentiary basis for his claims. ........................ 12

          2.   The balance of the harms weighs against unmasking the Doe defendants. ............. 13

V.    CONCLUSION ................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

Page(s)

**Cases**

3

*Art of Living Found. v. Does 1-10,*
  2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ................................................ *passim*

4

*Awtry v. Glassdoor, Inc.,*
  2016 WL 1275566 (N.D. Cal. Apr. 1, 2016) ........................................................ 4

5

*Braunstein v. Day,*
  144 N.Y.S.3d 624 (2d Dep't 2021) ........................................................................ 6

6

*Brown v. Dash,*
  2021 WL 4434978 (C.D. Cal. Jul. 27, 2021) ....................................................... 5

7

8

*Celle v. Filipino Rep. Enterprises Inc.,*
  209 F.3d 163 (2d Cir. 2000) .................................................................................. 8

9

*Cioffi III v. Averill Park Cent. Sch. Dist. Bd. of Educ.,*
  444 F.3d 158 (2d Cir. 2006) .................................................................................. 8

10

11

*Coleman v. Grand,*
  523 F. Supp. 3d 244 (E.D.N.Y. Feb. 26, 2021) ............................................. 8, 13

12

13

*Combier v. Portelos,*
  2018 WL 3302182 (E.D.N.Y. July 5, 2018) ......................................................... 9

14

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.,*
  551 F. Supp. 3d 320 (S.D.N.Y. 2021) .................................................................. 8

15

16

*Custom Packaging Supply, Inc. v. Phillips,*
  2016 WL 1532220 (C.D. Cal. Apr. 15, 2016) ...................................................... 9

17

*DeRicco v. Maidman,*
  175 N.Y.S.3d 476 (2022) ....................................................................................... 7

18

19

*Goldman v. Reddington,*
  2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) ....................................................... 8

20

*Highfields Cap. Mgmt., L.P. v. Doe,*
  385 F. Supp. 2d 969 (N.D. Cal. 2005) ........................................................ *passim*

21

22

*Highland Tank & Mfg. Co. v. PS Int'l, Inc.,*
  246 F.R.D. 239 (W.D. Pa. 2007) .......................................................................... 5

23

*In re Anonymous Online Speakers,*
  661 F.3d 1168 (9th Cir. 2011) .............................................................................. 3

24

*In re DMCA § 512(h) Subpoena to Twitter, Inc.,*
  2022 WL 2205476 (N.D. Cal. June 21, 2022) ............................................... 11, 14

25

26

*In re Grand Jury Subpoena Issued to Twitter, Inc.,*
  2017 WL 9485553 (N.D. Tex. Nov. 7, 2017) .................................................. 4, 11

27

*In re PGS Home Co. Ltd.,*
  2019 WL 6311407 (N.D. Cal. Nov. 25, 2019) ......................................... 11, 14, 15

28

*In re Ramaekers*,
33 F.Supp.2d 312 (S.D.N.Y. 1999) ................................................................... 5

*In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*,
2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010) .............................................. 10, 11

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*,
337 F.R.D. 639 (N.D. Cal. 2020) ................................................................. 4, 13

*Jacobus v. Trump*,
51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017) ............................................................ 6, 7

*Margolies v. Rudolph*,
2022 WL 2062460 (E.D.N.Y. June 6, 2022) ......................................... 7, 8, 9, 10

*Malibu Media, LLC v. Doe*,
2019 WL 7876473 (N.D. Ill. Jan. 2, 2019) ....................................................... 12

*Mirza v. Yelp, Inc.*,
2021 WL 3772039 (S.D.N.Y. Aug. 25, 2021) ............................................ 6, 7, 15

*Music Grp. Macao Com. Offshore Ltd. v. Does*,
82 F. Supp. 3d 979 (N.D. Cal. 2015) ........................................................ *passim*

*Nathanson v. Polycom, Inc.*,
2015 WL 12964727 (N.D. Cal. Apr. 16, 2015) ................................................... 9

*Neuman v. Glob. Sec. Sols., Inc.*,
2022 WL 1782588 (S.D.N.Y. June 1, 2022) ..................................................... 12

*New York v. Microsoft Corp.*,
2002 WL 649492 (D.D.C. Apr. 8, 2002) ............................................................ 5

*Nicolosi v. BRG Sports, Inc.*,
2019 WL 8158470 (E.D.N.Y. Dec. 23, 2019) ..................................................... 3

*Signature Mgmt. Team, LLC v. Doe*,
2015 WL 13036681 (E.D. Mich. Nov. 4, 2015) ............................................... 12

*Sony Music Entm't Inc. v. Does 1–40*,
323 F. Supp. 2d (S.D.N.Y. 2004) ...................................................................... 4

*Sony Music test, Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ................................................................ 4, 5, 6, 10

*Spencer v. City of New York*,
2012 WL 2866263 (S.D.N.Y. July 12, 2012) ...................................................... 8

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017) .............................................................................. 7

*Tokyo Univ. of Soc. Welfare*,
2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) ............................................. 11, 15

*Truman v. Brown*,
434 F. Supp. 3d 100 (S.D.N.Y. 2020) .............................................................. 10

RESPONDENT TWITTER, INC.'S OPPOSITION TO MOTION TO COMPEL
CASE NO. 3:22-MC-80319

*Wirt v. Twitter, Inc.*,
    2021 WL 5919846 (N.D. Cal. Dec. 15, 2021) ........................................................................ 5

**Statutes**

18 U.S.C. § 1030 .................................................................................................................... 2, 9

N.Y. Civ. Rights Law § 76-a ........................................................................................................ 8

**Rules**

Federal Rule of Civil Procedure 45 ............................................................................................ 2, 3

## I.  **INTRODUCTION**

Movant Shulim Leifer, who claims he was defamed by Twitter accountholders that spoke anonymously on Twitter's platform, moves to compel Twitter, Inc.'s compliance with a subpoena that would unmask the anonymous Twitter accountholders and provide Leifer with their identifying information.  Twitter opposes Leifer's motion to compel to ensure that Leifer first meets the requirements imposed by the First Amendment before he may unmask the anonymous accountholders.

Leifer's subpoena seeks identifying information for nine anonymous Twitter accounts which, among other things, purportedly authored defamatory Tweets about Leifer.  But before Leifer can unmask anonymous online speakers, he must demonstrate a "real evidentiary basis" for concluding that the requested discovery is appropriate, and he must satisfy the two-step test set detailed in *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005).  Leifer, however, seeks to avoid the application of *Highfields'* demanding standard by arguing that the Second Circuit's unmasking test should instead apply, but he offers no persuasive basis for this Court to deviate from the string of cases in this District applying *Highfields* to subpoenas seeking to unmask anonymous online speakers.

Under *Highfields*, Leifer must demonstrate that the anonymous speaker has caused him real harm (*i.e.*, plead a *prima facie* claim against the anonymous speaker supported by "a real evidentiary basis") that outweighs any potential chilling effects on speech.  *Id.* at 975-76.  Currently, Twitter does not believe Leifer may properly unmask the anonymous speakers behind the Twitter accounts based on the information he has provided in his complaint, in his motion, and in supporting declarations and exhibits. Leifer has not, for example, pled a *prima facie* claim for defamation—much less provided a "real evidentiary basis" for such a claim—because he has not adequately pled that the alleged statements were statements of fact, were false, or were made with actual malice (as required by New York's anti-SLAPP law).  Nor has Leifer demonstrated that the harm to him outweighs any chilling effects on speech.

Ultimately, Twitter's goal is to ensure that Leifer's subpoena is not used to chill anonymous speech that does not rise to the level of defamation.  Twitter thus asks that Leifer's motion to compel compliance with the subpoena be denied, unless the Court first finds that Leifer has satisfied the First Amendment's requirements for unmasking anonymous speakers.

## II.     **FACTUAL BACKGROUND**

Shulim Leifer is a resident of Brooklyn, New York, and a member of the Hasidic Orthodox Jewish Community.  *See generally* Dkt. 1-1, Parker Declaration (Parker Decl.), Ex. 2, Complaint ("Compl.") ¶¶ 5, 11.  According to Leifer, in late 2019, he became a "became a vocal, public advocate against social ills that exist within the Hasidic Community."  *Id.* ¶ 19.  Leifer proclaims that he has an "excellent reputation" that "provides credibility, allows him to substantiate his role as an advocate, and to generally withstand unfounded criticism."  *Id.* ¶ 22.  Indeed, Leifer claims to be a well-known public figure "within the worldwide Hasidic community" whose advocacy has been discussed by New York Times, the Jerusalem Post, and the Jewish Telegraphic Agency, among others.  *Id.* ¶ 23.

Leifer filed the Complaint underlying this motion to compel in the United States District Court for the Eastern District of New York, alleging defamation per se, violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030), and a claim for intentional infliction of emotional distress against nine anonymous Twitter accounts labeled as "Doe" defendants.  *Id.* ¶¶ 6, 61-86.  On May 11, 2022, Leifer moved unopposed to serve a pre-Rule 26(f) conference subpoena on non-party Twitter to obtain "identifying information for the [anonymous Twitter] accounts enumerated in the Complaint" that allegedly defamed him.  Parker Decl., Ex. 3.  The Eastern District granted that motion and permitted Leifer to "*serve a subpoena in compliance with Fed. R. Civ. P. 45* (the 'Subpoena') on Twitter to obtain identifying information of the Doe Defendants associated with the accounts identified in the Complaint and who are alleged to have published defamatory tweets and/or violated the Computer Fraud and Abuse Act."  Parker Decl., Ex. 4 at 1 (emphasis added).  The court also stated that "Twitter will have a period of 30 days to file any motions with this Court contesting the Subpoena."  *Id.* at 2.  The court *did not* order the unmasking of the accountholders or address the Second Circuit's unmasking standard; it only permitted service of a subpoena seeking the anonymous defendants' identities.  *Id.* at 1-2.

So, Leifer served Twitter with a subpoena issued from the Eastern District of New York and facially requiring compliance in the Southern District of New York.  Parker Decl., Ex. 1 at 1.  Over the next few weeks, Leifer's counsel and Twitter's counsel met and conferred regarding the subpoena.  Dkt. 1-2, Urbelis Declaration ¶ 2.  Counsel for Twitter raised three objections in these meetings and served a letter detailing those objections: ***first***, the Eastern District of New York lacked personal jurisdiction over

2

Twitter, as required to compel a nonparty to comply with a subpoena; **second**, the Eastern District of New York lacked jurisdiction to decide any motion related to the subpoena, as Federal Rule of Civil Procedure 45(c)(2)(A) limits any subpoena commanding production of documents—and any subpoena-related motion—to "a place within 100 miles of" Twitter's headquarters (the Northern District of California);[1] and **third**, the Eastern District of New York had not yet conducted the analysis required to unmask the anonymous Twitter accounts.  Parker Decl., Ex. 6 at 1-4 (citing cases).  Consistent with these objections, Twitter did not file a subpoena-related motion in the Eastern District of New York.

Now, more than four months after Twitter objected that "all Subpoena-related motions must be filed" in the Northern District of California, *id.* at 3, Leifer brings his motion to compel compliance with the subpoena in this Court, Dkt. 1, Motion to Compel Twitter, Inc. to Respond to Subpoena ("Mot.").

## III.   LEGAL STANDARD

Anonymous online speech is protected by the First Amendment to the United States Constitution.  The Ninth Circuit has recognized that, "[a]s with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation …[or] concern about social ostracism'."  *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citation omitted).

For this reason, parties seeking to unmask anonymous speakers must first satisfy the two-step test set forth in *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005).  Under this test, a litigant must first "adduce *competent evidence* . . . to support a finding of each fact that is essential to a given cause of action."  *Id.* at 975-76 (emphasis in original).  In other words, the litigant must "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff."  *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citation omitted).

This "real evidentiary basis" standard requires a plaintiff to establish a *prima facie* claim against the anonymous speaker, based on "*competent evidence*."  *Highfields*, 385 F. Supp. 2d at 975.  "It is not enough for a plaintiff to plead and pray," and "[a]llegation and speculation are insufficient."  *Id.*  If the

---

[1] Leifer in fact concedes that Eastern District of New York case law supports this objection.  *See* Mot. at 6 (citing *Nicolosi v. BRG Sports, Inc.*, 2019 WL 8158470, *2 (E.D.N.Y. Dec. 23, 2019)).

litigant makes this showing, the Court must then "assess and compare the magnitude of the harms," and only if this assessment reveals that "enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable the plaintiff to protect against or remedy serious wrongs," the Court may allow disclosure. *Id.* at 976. If the Court is not satisfied that the litigant has satisfied both steps of the *Highfields* test, then the requesting party may not discover the anonymous speaker's identity. *See Music Grp.*, 82 F. Supp. 3d at 985-87.[2]

## IV.   ARGUMENT

Plaintiff's motion to compel fails for at least two reasons. ***First***, Leifer applies the wrong unmasking test—the Second Circuit's *Arista/Sony Music* test, *Arista Recs., LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) (adopting factors from *Sony Music Entm't Inc. v. Does 1–40*, 323 F. Supp. 2d 556 (S.D.N.Y. 2004))—and fails to satisfy that test, in any event. ***Second***, Leifer fails both prongs of the *Highfields* test, which applies here. Leifer has not adequately pled any of his claims, so his claims necessarily fall well short of *Highfields*' higher "real evidentiary basis" standard. Further, even if the Court concludes that Leifer has met the first prong of *Highfields*, the balance of the harms weighs against unmasking the anonymous defendants, and so Leifer's motion to compel must be denied.

### A.   The Second Circuit's *Arista* Unmasking Test Is Inapplicable Here

In an attempt to circumvent this Court's stringent *Highfields* test, Leifer contends that the Second Circuit's *Arista* unmasking standard should apply here. Mot. at 7-8. He is wrong.

To start, courts in this District (including a case Leifer cites) consistently apply *Highfields* to subpoena-related motions, no matter where the underlying action is pending or the court from which the subpoena issued. *See, e.g.*, *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*, 337 F.R.D. 639, 642 (N.D. Cal. 2020) (applying *Highfields* to motion to compel where underlying action was filed in the Southern District of New York and subpoenas issued from that court); *Awtry v. Glassdoor, Inc.*, 2016 WL 1275566, at *1 (N.D. Cal. Apr. 1, 2016) (same where underlying action was

---

[2] Courts regularly hold that "businesses that provide an online medium of expression," like Twitter, "may assert their online users' First Amendment rights in opposing a party's request for information." *In re Grand Jury Subpoena Issued to Twitter, Inc.*, 2017 WL 9485553, at *3 (N.D. Tex. Nov. 7, 2017); *see also Music Grp.*, 82 F. Supp. 3d at 984-87 (permitting Twitter to assert the First Amendment rights of anonymous users when contesting a motion to enforce subpoenas).

4

filed in the Northern District of Illinois and subpoena issued from that court); *Music Grp.*, 82 F. Supp. 3d at 982 (same where underlying action was filed in the Western District of Washington and subpoena issued from that court); *Wirt v. Twitter, Inc.*, 2021 WL 5919846, at *1 (N.D. Cal. Dec. 15, 2021) (same where underlying action was filed in the District of Utah and subpoena issued from that court).  Leifer has not pointed to a case in this District applying a test other than *Highfields*.

The two cases Leifer relies on to assert that "courts apply the law of the circuit in which the subpoena was issued" are inapposite.  *In re Ramaekers*, 33 F.Supp.2d 312, 315 (S.D.N.Y. 1999), for example, has been expressly distinguished by courts following its publication:

> This is not a "case like [the] one" before the *Ramaekers* court.  In that case, and in each of the cases cited by that court, the courts were called upon to address issues of privilege and/or compliance with a subpoena **where a subpoena was issued from the jurisdiction within which the court was sitting**.  **Those courts then applied the law of the jurisdiction where the subpoena was issued, which was, in every case, that court's own law and precedent, and not that of another jurisdiction.**  Thus, home-circuit case law applied notwithstanding the fact that the underlying action was pending in another jurisdiction.  **Said otherwise, in no case cited in *Ramaekers* or by SBC did a court addressing issues of federal law apply the law of a circuit other than the law of the circuit in which that court sits.**

*New York v. Microsoft Corp.*, 2002 WL 649492, at *2 (D.D.C. Apr. 8, 2002) (cleaned up and emphasis added); *see also Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 244 (W.D. Pa. 2007) (stating the same).

*Brown v. Dash*, the other case on which Leifer relies, is more of the same.  2021 WL 4434978, *2 (C.D. Cal. Jul. 27, 2021).  There, the underlying case was filed in the Central District of California, the subpoena issued from the Central District of California, and so the court applied its own law.  *Id.  Ramaekers* and *Brown*, then, both applied the law *of their own Circuit*, and thus they provide no basis for this Court to apply *the law of a different Circuit* here.

### B.   Even If *Arista* Applied, Leifer Has Not Met That Standard

Assuming, for the sake of argument, the Second Circuit's *Arista* test applies here, Leifer would have to satisfy five factors: (1) a concrete showing of a *prima facie* claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy.  *Arista*, 604 F.3d at 119.  Leifer has failed to satisfy at least two of its factors,

and so his motion to compel fails: he has not established a *prima facie* case for defamation, and his claims do not outweigh the anonymous Twitter accountholders' expectation of privacy.[3]

### 1. Leifer has not established a *prima facie* case for defamation.

The first *Arista* factor requires the Court to consider a plaintiff's ability to make out a *prima facie* claim of actionable harm. *Id.* at 119. Leifer cannot make out a *prima facie* claim of defamation for at least three reasons. *First*, the statements that undergird Leifer's defamation claim are not statements of fact. *Second*, Leifer fails to adequately plead falsity. And *third*, Leifer's defamation claim falls within the scope of New York's anti-SLAPP statute, so he must plead actual malice; he has not.

***Statements of Fact.*** Under New York law, the elements of a cause of action for defamation are "(a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se." *Braunstein v. Da*y, 144 N.Y.S.3d 624, 625 (2d Dep't 2021) (internal quotation marks omitted). Defamation requires a statement of fact, rather than opinion, and New York courts have consistently "protected statements made in online forums as statements of opinion rather than fact." *Jacobus v. Trump*, 51 N.Y.S.3d 330, 339 (N.Y. Sup. Ct.), *aff'd*, 64 N.Y.S.3d 889 (2017) (collecting cases). This is because "[t]he culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a 'freewheeling, anything-goes writing style.'" *Id.* at 478 (citation omitted). Thus, "'epithets, fiery rhetoric or hyperbole' advanced on social media have been held to warrant an understanding that the statements contained therein are 'vigorous expressions of personal opinion,' 'rather than the rigorous and comprehensive presentation of factual matter.'" *Id.* (citations omitted). Courts must also be mindful that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts." *Mirza v. Yelp, Inc.*, 2021 WL 3772039, at *2 (S.D.N.Y. Aug. 25, 2021).

All the statements on which Leifer's defamation claim rests were made on the internet

---

[3] Although Leifer contends that the Eastern District of New York has already addressed these factors, the court's order does not mention the *Arista* factors, *see* Parker Decl., Ex. 4, and courts have rejected the argument that satisfying the requirements for expedited discovery simultaneously satisfies the standard for unmasking, *see Mirza v. Yelp, Inc.*, 2021 WL 3772039, at *3 (S.D.N.Y. Aug. 25, 2021).

(specifically, on Twitter), Compl. Exs. 2-8, 10-16, which courts applying New York defamation law have concluded cuts against the conclusion that they are statements of fact, *see Jacobus*, 51 N.Y.S.3d at 339; *Mirza*, 2021 WL 3772039, at \*2; *DeRicco v. Maidman*, 175 N.Y.S.3d 476 (2022).  And a number of the statements at issue could not reasonably be construed as statements of fact, even if they were posted in a non-internet forum.  *See, e.g.*, Compl. Ex. 12 ("Even though there are more people who accuse @ShulimLeifer of sexual assault that openly support @yaffedorg we can win this war."); *id*. Ex. 13 ("This account is exposing the fact that I am the world's greatest slimeball.").  Accordingly, Leifer has not pled that the allegedly defamatory statements are "statements of fact" under New York law.

*Falsity*.  "'Substantial truth' is the standard by which New York law, and the law of most other jurisdictions, determines an allegedly defamatory statement to be true or false."  *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017).  To plead falsity, a plaintiff "must identify how the defendant's statement was false to survive a motion to dismiss."  *Id.* at 242-45 (citation omitted).  That is, a plaintiff has "to plead facts that, if proven, would allow a reasonable person to consider the statement false[,]" *i.e.*, "facts that, if proven, would establish that the defendant's statements were not substantially true."  *Id.* at 247.  Leifer has not done so here.

*Margolies v. Rudolph*, a recent case decided by Magistrate Judge Bulsara (who is presiding over the case that underlies the instant subpoena), addressed what allegations of "falsity" are required to state a claim of defamation under New York law based on allegations of sexual misconduct.  2022 WL 2062460, at \*10 (E.D.N.Y. June 6, 2022).  There, the plaintiff filed a defamation action after the defendant announced the plaintiff's removal from a Facebook group based on statements made on Facebook that the plaintiff had engaged in sexual misconduct.  *Id.* at \*1.  Magistrate Judge Bulsara dismissed the New York defamation claim based on, among other things, the plaintiff's failure to allege "falsity."  *Id.* at \*10.  Although the plaintiff repeatedly alleged that the Facebook post regarding his alleged sexual misconduct was "false," "unsubstantiated," and "untrue," this alone was not enough: "These are conclusory statements, and not facts from which any inferences could be drawn."  *Id.*

So too is the case here.  Leifer repeatedly claims that the allegedly defamatory statements are "false," *see, e.g.*, Compl. ¶¶ 26, 28, 36, 39, 41, 62, 66, but he fails "'to plead facts that, if proven, would allow a reasonable person to consider the statement false[,]' *i.e.*, 'facts that, if proven, would establish

that the defendant's statements were not substantially true.'" *Margolies*, 2022 WL 2062460, at *10.  For example, the Complaint does not deny the allegations of sexual harassment beyond conclusorily stating that they are "false" or "libelous."  *See* Compl. ¶¶ 28, 45, 70.  And while Twitter takes no position on whether the allegedly defamatory statements are, in fact, false, Leifer's barebones allegations of falsity are too conclusory to state a *prima facie* case of defamation.  *Margolies*, 2022 WL 2062460, at *10.

**Actual Malice**.  But even if the statements at issue (1) were statements of fact and (2) were false, Leifer has failed to plead actual malice, as required by New York's anti-SLAPP statute.[4]  The New York anti-SLAPP statute expands the category of claims that must plead actual malice.  Under recent amendments to that law, any action "involving public petition and participation," including one based on "any communication in a place open to the public or a public forum in connection with an issue of public interest," must plead actual malice.  N.Y. Civ. Rights Law § 76-a(1)(a)(1)–(2).

Courts applying New York's anti-SLAPP statute have interpreted "a public forum" to include online social media platforms, including Twitter.  *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021) (Twitter); *Coleman v. Grand*, 523 F. Supp. 3d 244 (E.D.N.Y. Feb. 26, 2021) (Facebook).  Likewise, the tweets on which Leifer's defamation claim center are matters of "public interest"—a term that is "construed broadly" to "mean *any subject other than a purely private matter*," N.Y. Civ. Rights Law § 76-a(1)(d) (emphasis added)—because they discuss alleged sexual misconduct committed by Leifer, *see Goldman v. Reddington*, 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021) (speech regarding sexual assault was of "public interest"); *Cioffi III v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 164 (2d Cir. 2006) (speech on sexual assault of student was of "paramount interest" and "obvious concern to the public."); *Spencer v. City of New York*, 2012 WL 2866263, at *11 (S.D.N.Y. July 12, 2012) (reports of sexual assault are matters of public concern).

---

[4] Leifer also repeatedly concedes that he is a "public advocate" and a "name known within the international Hasidic Community" whose "reputation continues to grow within the worldwide Hasidic Community," Compl. ¶¶ 19, 23, 25, 26, and thus he is a public figure required to plead actual malice to state a defamation claim under New York law, even in the absence of New York's anti-SLAPP statute. *See Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (holding that, under New York law, where plaintiff characterized himself as a "well known radio commentator," district court correctly concluded that plaintiff was a public figure).  For the same reasons stated in this section, he has not pled actual malice.

*Margolies* is also informative on actual malice.  2022 WL 2062460, at *6-7.  There, the defendant argued that the Facebook group in which the allegedly defamatory statement was posted was a "a place open to the public or a public forum" and that the speech at issue—discussing allegations of sexual harassment—were matters of public interest, so New York's anti-SLAPP statute applied.  *Id.* Magistrate Judge Bulsara agreed (1) that "[p]rovisions of an anti-SLAPP law that do not conflict with any federal rule or law—such as provisions that change the elements of a defamation claims—may be applied in federal court," (2) that the Facebook group was a public forum because "it has no meaningful barriers to entry—to join one need only agree to the rules of the group—and its members appear to be free to speak online about any subject openly," and (3) that the statements about sexual misconduct were matters of "public interest" given the "broad reach the statute provides for the term."  *Id.* at *6-7, 9 & n.39.  Thus, the plaintiff was required to plead actual malice but had not because the complaint did not "provide any facts on which to infer that Rudolph made the Facebook Post either with knowledge that the allegations against [Plaintiff] were false or in reckless disregard of their falsity."  *Id.* at *7.

Consistent with *Margolies* and New York's anti-SLAPP statute, Leifer must plead actual malice; he has not, nor does his motion to compel even address actual malice.[5]  *See generally* Mot. at 5-16.  Only once also does Leifer's Complaint even use the term "malice," and it does so in boilerplate language.  Compl. ¶ 63 ("All of the statements made by Does and pleaded herein were made with malice, or in the alternative, gross negligence.").  Indeed, Leifer appears to *concede* that the statements at issue may have instead been made with "gross negligence," which he pleads in the alternative.  *Id.* Such barebones, conclusory, and contradictory allegations of actual malice cannot make out a *prima facie* claim of defamation.  *See Margolies*, 2022 WL 2062460, at *7 (collecting cases).[6]

---

[5] By failing to address actual malice in his opening brief, Leifer has waived the issue.  *See Nathanson v. Polycom, Inc.*, 2015 WL 12964727, at *1 (N.D. Cal. Apr. 16, 2015) (stating that arguments not raised in a party's opening brief are waived).

[6] Leifer's Complaint also contains claims for (1) intentional infliction of emotional distress and (2) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Leifer, however, does not argue in his motion that those claims meet *Arista*'s "*prima facie*" standard or *Highfields*' "real evidentiary basis" standard, and so he has waived those arguments.  *Nathanson*, 2015 WL 12964727, at *1.  Regardless, those claims would fail both standards.  For the CFAA claim, Leifer has not adequately alleged "damages" or "losses"—that is, damage or loss *to computers or networks*—compensable by the CFAA.  *See Combier v. Portelos*, 2018 WL 3302182, at *9-10 (E.D.N.Y. July 5, 2018) ("[N]on-economic losses such as reputational harm and emotional distress are not compensable under the CFAA.");  *Custom*

9

1

### 2. Leifer's need for the subpoenaed information does not outweigh the Doe defendants' expectation of privacy.

Leifer also fails to demonstrate that the importance of the subpoenaed information to his defamation claim outweighs the anonymous Twitter accountholders' expectation of privacy, further dooming his motion to compel under *Arista*. *See Arista*, 604 F.3d at 119.

Consistent with the principle that anonymous speech on the internet is protected by the First Amendment, courts applying the *Arista/Sony Music* factors have declined to unmask anonymous users where—as here—the users engage in "purely expressive" speech and unmasking would interfere with the users' right to privacy. *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, 2010 WL 2219343, at *9 (E.D.N.Y. Feb. 5, 2010), *report and recommendation adopted in relevant part*, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) ("*Cablevision*"). *Cablevision* is informative on this point. There, the respondent sought to unmask the identity of a Doe defendant that anonymously posted about publicly traded stocks on various internet message boards. *Id.* at *2-3. The Doe defendant caught wind of the subpoena and moved to quash on the ground that his unmasking would violate his right to privacy and his First Amendment right to anonymous speech. *Id.* at *4.

The court agreed with the Doe defendant: "Doe [] has a privacy interest in maintaining the confidentiality of his identity and whereabouts as a customer of Cablevision, his internet service provider. This interest, differs little, in substance, from that of a bank customer who seeks to shield his or her financial affairs from public scrutiny; *they both arise from the movant's relationship with an entity and service for which expectations of privacy run high*." *Id.* at *5 (emphasis added). The court then concluded that the speech at issue was "purely expressive" and "communicated information, expressed opinion, recited grievances, [and] protested claimed abuses." *Id.* at *8. It was thus entitled to

---

*Packaging Supply, Inc. v. Phillips*, 2016 WL 1532220, at *5 (C.D. Cal. Apr. 15, 2016) (collecting cases). Likewise, Leifer has not pled an intentional infliction of emotional distress claim under New York law, as he fails to adequately allege "extreme and outrageous conduct" and "severe emotional distress." *See Truman v. Brown*, 434 F. Supp. 3d 100, 117-19 (S.D.N.Y. 2020) ("false accusations of criminal conduct, or conduct that society deems reprehensible, do not inherently establish" extreme and outrageous conduct); *Margolies*, 2022 WL 2062460, at *11 (dismissing intentional infliction of emotional distress claim where plaintiff alleged that statements caused him to "los[e] business opportunities"); *id.* ("Margolies's conclusory allegation that he suffered 'mental anguish and severe psychological and emotional distress[]' [] is facially insufficient to sustain the claim.").

10

"heightened First Amendment protection," and the court quashed the subpoena.  *Id.* at *9, 12-13

Like the Doe defendant in *Cablevision*, the anonymous Twitter accountholders here have "high" "privacy interest[s] in maintaining the confidentiality of [their] identity and whereabouts as [users] of [Twitter.]"  *Id.* at *5.  And like the Doe defendant in *Cablevision*, the accountholders here have engaged in purely expressive (and non-defamatory, *see supra* Section IV.B.1) speech entitled to "heightened First Amendment protection."  *Id.* at *9.

The *Cablevision* court is not alone.  Other courts addressing Doe defendants' privacy interests have noted that "the disclosure of [a Doe defendant's] identity is itself an irreparable harm" and that "unveiling [the Doe defendant's] true identity diminishes the free exchange of ideas guaranteed by the Constitution."  *Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *9 (N.D. Cal. Nov. 9, 2011).

Twitter's Privacy Policy does not change this calculus.  Indeed, that policy states only that Twitter "*may* preserve, use, share, or disclose your information if we believe that it is reasonably necessary to [] comply with a law, regulation, legal process, or governmental request."  *Privacy Policy*, Twitter at Sec. 3.3 (eff. June 10, 2022), https://twitter.com/en/privacy (emphasis added).  The mere fact that Twitter "may" disclose user information "if [Twitter] believe[s] that it is reasonably necessary" to respond to a subpoena does not mean it *must* immediately do so, and it does not negate accountholders' privacy interests.  Indeed, even with the language of Twitter's Privacy Policy, courts continue to protect the identity of anonymous Twitter accountholders.  *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 2022 WL 2205476, at *7 (N.D. Cal. June 21, 2022) (granting motion to quash subpoena seeking the identity of anonymous Twitter user); *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (N.D. Cal. Sept. 9, 2021) (same); *In re PGS Home Co. Ltd.*, 2019 WL 6311407, at *6 (N.D. Cal. Nov. 25, 2019) (same); *In re Grand Jury Subpoena Issued to Twitter, Inc.*, 2017 WL 9485553, at *13 (same); *Music Grp.*, 82 F. Supp. 3d at 982 (denying motion to enforce subpoena seeking Twitter users' identities).

Leifer's need to serve his Complaint cannot alone overcome the accountholders' right to privacy.  *See* Mot. at 12.  Of course, a plaintiff will *always* need the identity of a Doe defendant to serve their complaint, but that need cannot—without more—justify unmasking anonymous defendants.  *See infra* cases cited at page 14-15 (collecting cases in which courts have denied unmasking subpoenas, even when the plaintiffs would otherwise be unable to effect service).  Leifer thus fails to establish that his

need for the anonymous Twitter accountholders' identities outweighs those defendants' privacy and speech interests, and so his motion to compel should be denied.

### C.   Leifer Has Not Satisfied The *Highfields* Test

Despite Leifer's request to the contrary, this Court should—consistent with a slew of cases in this District—apply *Highfields*' unmasking test to this motion to compel.  *Highfields* is a two-step inquiry.  The moving party must first "persuade the court that there *is a real evidentiary basis* for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff."  *Highfields*, 385 F. Supp. 2d at 975-76 (emphasis added).  If the movant makes this showing, the court must then "assess and compare the magnitude of the harms that would be caused to the [movant's and defendants'] competing interests" by ordering that the defendants' identities be disclosed.  *Id.* at 976.  Leifer fails to clear either *Highfields* hurdle.

#### 1.   Leifer has not demonstrated a real evidentiary basis for his claims.

*Highfields*' "real evidentiary basis" requirement is one of "middling rigor"; while it does not require a movant to "survive a hypothetical motion for summary judgment," it is "[m]ore demanding" than a motion to dismiss.  *Music Grp.*, 82 F. Supp. 3d at 984.  District courts have also noted that the *Highfields* standard is higher than the Second Circuit's *Arista/Sony Music* standard.  *See Signature Mgmt. Team, LLC v. Doe*, 2015 WL 13036681, at *7 (E.D. Mich. Nov. 4, 2015); *Art of Living Foundation*, 2011 WL 5444622, at *5 (suggesting that *Highfields* is a more exacting standard than *Sony Music*); *accord Malibu Media, LLC v. Doe*, 2019 WL 7876473, at *2 (N.D. Ill. Jan. 2, 2019) (applying *Arista* and stating that a litigant need only plausibly allege facts that would satisfy *Twombly* and *Iqbal*).

Because Leifer has failed to adequately plead his defamation claim—and thus fails to satisfy *Arista*—he necessarily fails to clear *Highfields*' higher "real evidentiary basis" standard.  *See supra* Section IV.B.  Assuming, however, that Leifer has adequately *pled* defamation, he has still failed to provide a *real evidentiary basis* for each element of that claim.

Take the element of "falsity."  Under New York law, "the burden is on the plaintiff to show that the statements are false."  *Neuman v. Glob. Sec. Sols., Inc.*, 2022 WL 1782588, at *3 (S.D.N.Y. June 1, 2022) (citation omitted).  And under *Highfields*, Leifer must "adduce competent evidence" of each fact that is "essential" to his defamation claim.  *Highfields*, 385 F. Supp. 2d at 975-76.  But here, Leifer's

"evidence" of falsity is no more than the allegations of his Complaint.  Mot. at 14-15.  As Leifer recognizes, *Highfields* demands more than just pleading falsity in a way that might satisfy Rules 8 and 12(b)(6)—he must also "adduce competent evidence" of falsity.  *Highfields*, 385 F. Supp. 2d at 975-76; *see also* Mot. at 14 ("The *Highfields* standard is '[m]ore demanding than the good faith or motion to dismiss standard' used by some courts.").  Without providing any evidence of falsity, Leifer's defamation claim cannot satisfy *Highfields*.  *In re Rule 45 Subpoenas*, 337 F.R.D. at 650 ("repeat[ing] the allegations of the complaint in the underlying action" does not satisfy *Highfields*).

Similarly, Leifer fails to adduce competent evidence—and indeed, fails to address entirely—actual malice.  Mot. at 13-15.  Again, under New York law, the burden is on the plaintiff to establish that the speaker "spoke with actual malice."  *Coleman*, 523 F. Supp. 3d at 260-61.  Leifer's motion and its accompanying exhibits and declarations do not even attempt to address whether the anonymous Twitter accountholders spoke with "actual malice," much less provide a "real evidentiary basis" for actual malice.  *See*, *e.g*, Mot. at 13-15.  And even assuming Leifer had provided *some* evidence that the accountholders' statements were motivated by, for example, "ill will" towards him, that alone would not be enough to establish actual malice.  *Coleman*, 523 F. Supp. 3d at 261.

Because Leifer has not adduced competent evidence for two elements of his defamation claim, he fails to meet *Highfields*' "real evidentiary basis" standard, and his motion to compel must be denied.

## 2.    The balance of the harms weighs against unmasking the Doe defendants.

Leifer's motion to compel should likewise be denied because the balance of the harms weighs against unmasking the anonymous Twitter accountholders.

In applying the second prong of the *Highfields* analysis, this Court must consider the "magnitude of the harm" to the anonymous defendants that would result from revealing their identities.  *Art of Living Found.*, 2011 WL 5444622, at *8.  "[T]he specific circumstances surrounding the speech serve to give context to the balancing exercise."  *Id.* at *5 (citation omitted).  Further, in making this assessment, the court must ask "whether disclosure of the defendant's identity would deter other critics from exercising their First Amendment rights."  *Id.* at *7-8 (citing *Highfields*, 385 F. Supp. 2d at 980-81).  As *Highfields* put it, courts must remember that "[a]nonymity liberates."  *Highfields*, 385 F. Supp. 2d at 980.  This is particularly true where an anonymous speaker discusses "issues of political importance such as sexual

harassment." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 2022 WL 2205476, at *7.

A few cases should inform this Court's balancing analysis.  Start with *Art of Living*.  2011 WL 5444622, at *1.  There, the Art of Living Foundation filed a complaint alleging, among other things, defamation, against ten anonymous defendants based on the defendants' allegedly "false and disparaging" remarks made on the internet about Art of Living.  *Id.*  In an effort to unmask the anonymous defendants, Art of Living served subpoenas on Google and Automattic, Inc.  *Id.*  The anonymous defendants moved to quash, arguing that "allowing disclosure of their identities would violate their First Amendment right to anonymous speech." *Id.* at *2.  One of the defendant's motions for relief from an order denying their motion to quash landed before then-District Judge Koh, who ruled that (1) *Highfields* applied to the motion and (2) the motion for relief must be granted.  *Id.* at *3.

Addressing the balance of the harms, Judge Koh first noted that "the disclosure of [the anonymous defendant's] identity is itself an irreparable harm," and as a result, "[i]nsofar as [the anonymous defendant] may communicate his message more openly or garner a larger audience by employing a pseudonym, unveiling his true identity diminishes the free exchange of ideas guaranteed by the Constitution." *Id.* at *9.  Judge Koh then stated that, "revelation of an anonymous speaker's identity may invite 'ostracism for expressing unpopular ideas, ... retaliation from those who oppose her ideas or from those whom she criticizes, or simply give unwanted exposure to her mental processes.'" *Id.* (citation omitted).  Balancing these harms against the plaintiff's interests in unmasking, Judge Koh held that the balance of the harms weighed in favor of granting the motion for relief.  *Id.* at *10.

Next, examine *Music Group*, 82 F. Supp. 3d at 979.  In *Music Group*, Magistrate Judge Beeler denied a motion to enforce a subpoena that sought to unmask anonymous Twitter users that allegedly made defamatory statements.  *Id.* at 982.  Addressing *Highfields*' balancing prong, Magistrate Judge Beeler concluded that even "troubling" comments suggesting that the plaintiff's CEO evaded taxes or comments resembling "fighting words and obscenity" were not, read in context, "outside" the protection of the First Amendment.  *Id.* at 986-87.  Although the plaintiff would be unable to serve the complaint on the anonymous defendants without unmasking, the court still concluded that "defendants' First Amendment rights outweigh[ed] plaintiffs' need for the requested information." *Id.* at 982.

Then, turn to *In re PGS Home Co. Ltd.*, 2019 WL 6311407.  Consistent with *Music Group*, Chief

14

Magistrate Judge Spero granted Twitter's motion to quash a subpoena that sought to unmask an anonymous Twitter user who made allegedly defamatory statements. *Id.* at *6. Although the court held that the plaintiff had not shown a "real evidentiary basis" for its claims, it went further and stated that "even if these Tweets did cause real harm, that harm is outweighed by the First Amendment concerns related to disclosing the speaker's identity." *Id.* Quoting from *Music Group*, the court concluded that "'[t]hese are views in which other members of the public may well be interested—and that defendant has a right to express anonymously.'" *Id.* (quoting *Music Group*, 82 F. Supp. 3d at 985).

These cases (among others) make clear that the balance of the harms weighs against unmasking the anonymous Twitter accountholders. To the accountholders, the risk of irreparable harm from unmasking and "diminish[ment of] the free exchange of ideas guaranteed by the Constitution," *Art of Living*, 2011 WL 5444622, at *9, "poses a real threat to chill protected comment on matters of interest to the public," *Highfields*, 385 F. Supp. 2d at 980.

Leifer's concern is the inability to serve process on the defendants he has sued. Mot. at 6. This is not enough to tip the balance in favor of unmasking. A series of courts applying *Highfields* have declined to enforce subpoenas seeking to unveil the identities of anonymous defendants, even when the plaintiff would otherwise be unable to serve process. *See Music Grp.*, 82 F. Supp. 3d at 982 (denying motion to enforce subpoena even though "Music Group has not been able to serve process on the defendants"); *In re PGS Home Co. Ltd.*, 2019 WL 6311407, at *6; *Highfields*, 385 F. Supp. 2d at 981; *Mirza*, 2021 WL 3772039, at *1-3 (applying *Highfields*); *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *1. Indeed, *Music Group* is directly on point: (1) the plaintiff wanted the identities of anonymous Twitter users to serve a complaint, (2) the plaintiff alleged defamation claims against those anonymous defendants, and (3) the plaintiff moved to enforce the subpoena to unmask the defendants. *Music Grp.*, 82 F. Supp. 3d at 982. The *Music Group* court still found that the balance of the harms weighed *against* unmasking and thus denied the motion to enforce the subpoena. *Id.* at 986-87.

As a result, even if this Court were to reach the balance of the First Amendment harms, the harm to the anonymous Twitter accountholders from their unmasking outweighs any harm to Leifer.

## V.   **CONCLUSION**

For the reasons stated above, Leifer's motion to compel should be denied.

15

Dated: December 23, 2022

Respectfully submitted,

THE NORTON LAW FIRM PC

By: */s/ Gil Walton*
     Gil Walton
     Attorneys for Respondent
     TWITTER, INC.

RESPONDENT TWITTER, INC.'S OPPOSITION TO MOTION TO COMPEL
CASE NO. 3:22-MC-80319