1  CROWELL & MORING LLP
   Warrington S. Parker, III (SBN 148003)
2  3 Embarcadero Center, 26th Floor
   San Francisco, CA 94111
3  Telephone: (415) 986-2800
   Facsimile: (415) 986-2827
4  WParker@crowell.com

5  CROWELL & MORING LLP
   Alexander Urbelis (admitted *pro hac vice*)
6  Preetha Chakrabarti (admitted *pro hac vice*)
   590 Madison Avenue, 20th Floor
7  New York, NY 10022
   Telephone: (212) 223-4000
8  Facsimile: (212) 223-4134
   AUrbelis@crowell.com
9  PChakrabarti@crowell.com

10 Attorneys for Movant
   SHULIM LEIFER
11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                     SAN FRANCISCO DIVISION

15

16 SHULIM LEIFER                          Case No. 3:22-MC-80319-SK

17            Movant,                     **MOVANT SHULIM LEIFER'S REPLY
                                          IN SUPPORT OF MOTION TO COMPEL
18     v.                                 TWITTER, INC. TO RESPOND TO
                                          SUBPOENA**
19 TWITTER, INC.,
                                          (*Shulim Leifer v. John Does 1-9*, pending in
20            Respondent.                 the United States District Court for the
                                          Eastern District of New York, Civil Action
21                                        No. 22-CV-1770-NRM-SJB)

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

                              1

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.     THE SECOND CIRCUIT'S *ARISTA* FACTORS FOR UNMASKING
ANONYMOUS DEFENDANTS WERE PROPERLY CONSIDERED BY
THE EASTERN DISTRICT OF NEW YORK PRIOR TO ISSUING THE
SUBPOENA ......................................................................................................... 1

     A.    The E.D.N.Y. Action Properly Considered the *Arista* Factors. ................. 1

     B.    The *Arista* Factors Are an Appropriate Standard for Unmasking that
the Ninth Circuit Should Utilize. ................................................................. 3

II.    LEIFER MEETS THE SECOND CIRCUIT'S *ARISTA* STANDARD FOR
UNMASKING ANONYMOUS DEFENDANTS .................................................. 4

     A.    Leifer Established a *Prima Facie* Case for Defamation. ........................... 5

          1.    The tweets at issue are statements of fact. .................................... 5

          2.    The tweets at issue are false and Leifer adequately pleaded
so. ..................................................................................................... 7

          3.    Leifer adequately pleaded actual malice. ...................................... 8

     B.    Leifer's Claim Outweighs the Anonymous Doe Defendants'
Expectation of Privacy. .............................................................................. 10

III.   LEIFER MEETS THE NINTH CIRCUIT'S *HIGHFIELDS* STANDARD
FOR UNMASKING ANONYMOUS DEFENDANTS ...................................... 11

     A.    Leifer has Provided a Real Evidentiary Basis for the Defamation
Per Se Claim under New York Law............................................................. 11

     B.    The *Highfields'* Balancing of Harms Would Weigh in Leifer's
Favor. .......................................................................................................... 13

CONCLUSION ...................................................................................................... 15

CROWELL
& MORING LLP
ATTORNEYS AT LAW

i

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011) ............................................................. 4

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) .......................................................... *passim*

*Awtry v. Glassdoor, Inc.*,
    No. 16-mc-80028-JCS, 2016 WL 1275566 (N.D. Cal. Apr. 1, 2016) ..................................... 4

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
    151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir.
    2016) ........................................................................ 5, 6, 9, 10

*Celle v. Filipino Rep. Enters. Inc.*,
    209 F. 3d 163 (2d Cir. 2000) ....................................................... 8, 10, 15

*Church of Scientology Int'l v. Behar*,
    238 F.3d 168 (2d Cir. 2001) ............................................................. 8

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989) .................................................................... 9

*Highfields Cap. Mgmt., L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal 2005) .............................................. *passim*

*Jacobus v. Trump*,
    51 N.Y.S.3d 330, 339 (N.Y. Sup. Ct. 2017), *aff'd*, 64 N.Y.S.3d 889 (2017) .................... 5

*Karedes v. Ackerley Group, Inc.*,
    423 F.3d 107 (2d Cir. 2005) ......................................................... 12, 13

*Khalil v. Fox Corp.*,
    No. 21 Civ. 10248 (LLS), 2022 WL 4467622 (S.D.N.Y. Sept. 26, 2022) .......................... 12

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997) ............................................................. 6

*Margolies v. Rudolph*,
    No. 21-CV-2447-SJB, 2022 WL 2062460 (E.D.N.Y. June 6, 2022) ........................... *passim*

*Mirza v. Doe #1*,
    No. 20-CIV-9877, 2021 WL 4596597 (S.D.N.Y. Oct. 6, 2021) .............................. 5, 11, 13

# TABLE OF AUTHORITIES
### (Continued …)

**Page(s)**

*Mirza v. Yelp*,
  No. 19-mc-80146-SK, ECF No. 12 (N.D. Cal. Jul. 23, 2019) (Kim, J.) ........................... 3, 14

*Music Grp. Macao Com. Offshore Ltd. v. Does*,
  82 F. Supp. 3d 979 (N.D. Cal. 2015) ........................................................................... 4

*In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*,
  No. MISC-08-347 (ARR)(MDG), 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) ........................................................................................................................ 11

*In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*,
  No. MISC-08-347 (ARR)(MDG), 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010) ............. 10, 11

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*,
  337 F.R.D. 639 (N.D. Cal. 2020) ................................................................................. 4

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
  208 F.R.D. 273 (N.D.Cal. 2002) ................................................................................. 2

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ............................................................................................... 8, 9

*Strike 3 Holdings, LLC v. Doe*,
  329 F.R.D. 518 (S.D.N.Y. 2019) ................................................................................. 2

*Taylor v. Doe*,
  No. 1:20-CV-03398, 2021 WL 2940919 (S.D.N.Y. July 12, 2021) ............................... 10

*Torati v. Hodak*,
  47 N.Y.S.3d 288 (1st Dep't 2017) ............................................................................... 7

*UMG Recordings, Inc. v. Doe*,
  No. C 08-1193 SBA, 2008 WL 4104214 (N.D. Cal. Sep. 3, 2008) ............................... 3

*United States v. Stevens*,
  559 U.S. 460 (2010) ................................................................................................. 10

*USA Techs., Inc. v. Doe*,
  713 F. Supp. 2d 901 (N.D. Cal. 2010) ....................................................................... 14

*Wexler v. Dorsey & Whitney LLP*,
  815 F. App'x 618 (2d Cir. 2014) ................................................................................. 7

*Wirt v. Twitter, Inc.*,
  No. 21-mc-80166-JSC, 2021 WL 5919846 (N.D. Cal. Dec. 15, 2021) ........................ 4

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

**Statutes**

Cal. Civ. Proc. Code § 425.16 (West 2023) .................................................................. 13

N.Y. Civ. Rights Law § 76-a(1)(a)(1–2) ...................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 26(d)(1) ............................................................................................. 1, 2

Fed. R. Civ. P. 45 .................................................................................................... 1, 2, 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Crowell
& Moring LLP
Attorneys at Law

-iv-

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

**INTRODUCTION**

Plaintiff in the case *Shulim Leifer v. John Does 1-9, Civil Action No. 22-CV-1770-NRM-SJB* (the E.D.N.Y. Action"), Shulim Leifer ("Leifer"), has taken all appropriate steps to seek discovery to effectuate service upon the Doe Defendants engaged in defamatory speech and served a court-authorized subpoena upon the *only* company able to help Leifer seek a civil remedy: Twitter, Inc. ("Twitter"). Leifer has now moved this Court to compel Twitter to respond to Leifer's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena"). Twitter's objections to this Subpoena are unpersuasive and this Court should compel compliance with Judge Bulsara's Order.

**ARGUMENT**

**I.    THE SECOND CIRCUIT'S *ARISTA* FACTORS FOR UNMASKING ANONYMOUS DEFENDANTS WERE PROPERLY CONSIDERED BY THE EASTERN DISTRICT OF NEW YORK PRIOR TO ISSUING THE SUBPOENA**

**A.    The E.D.N.Y. Action Properly Considered the *Arista* Factors.**

The court in the E.D.N.Y. Action properly issued an order granting expedited discovery to Leifer prior to the Rule 26(f) conference in the form of the Subpoena. Declaration of Warrington Parker ("Parker Decl.") (ECF No. 1.1), Exh. 4 (Order Granting Motion to Discover). Twitter does not argue that the relief granted by the court in the E.D.N.Y. Action was improper, nor could it, as this relief is contemplated under Federal Rule of Civil Procedure 26(d)(1). Twitter argues that the E.D.N.Y. Action only permitted Leifer to serve a subpoena and did not "order the unmasking of the accountholders or address the Second Circuit's unmasking standard[.]" Twitter's Opp. to Mot. to Compel at 2. This is incorrect. The E.D.N.Y. Action permitted Leifer to "serve a subpoena in compliance with Fed. R. Civ. P. 45 (the 'Subpoena') on Twitter *to obtain identifying information of the Doe Defendants associated with the accounts identified* in the Complaint[.]" Parker Decl., Exh. 4 at 1 (emphasis added).

The Subpoena Judge Bulsara authorized Leifer to serve on Twitter sought four items that clearly reflect the intention to seek the identity of the Doe Defendants. Parker Decl., Exh. 1 (Subpoena). The Order limited Leifer's use of any disclosed information to the purpose of protecting his rights in the Complaint. Parker Decl., Exh. 4 at 2. While the Subpoena seeks

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

information that could lead to the identification of the Doe Defendants, it may not definitively identify the Doe Defendants. This is because the account information sought is likely to be incomplete, stale, or bogus. The metadata that the Subpoena seeks—in particular, the IP addresses associated with the accounts—can be traced to a particular Internet service provider, which Leifer would then have to further subpoena to fully unmask the identity of the customer to whom that IP addresses was assigned at a particular date and time. For this reason, Twitter's categorical opposition to unmasking the Doe Defendants is misplaced.[1] Mot. to Compel at 4-5. Critically, however, the components of both Leifer's motion for expedited discovery and Judge Bulsara's Order granting the expedited discovery demonstrate the court's awareness that the Subpoena sought information that would, ultimately, allow identification of the Doe Defendants so that Leifer's lawsuit could proceed.

If the facial evidence is not persuasive enough for Twitter to believe that the court in the E.D.N.Y. Action considered the *Arista* factors, Twitter need look no further than the Second Circuit's standard for Rule 26(d) expedited discovery and Leifer's motion for expedited discovery. Parker Decl., Exh. 3 (Motion for Expedited Discovery). The Federal Rules permit discovery prior to the Rule 26(f) conference when authorized by court order. Fed. R. Civ. P. 26(d)(1). Courts may order expedited discovery when a plaintiff is unable to identify and serve the opposing party, applying a "flexible standard of reasonableness and good cause." *Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 520 (S.D.N.Y. 2019); *see also Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275 (N.D.Cal. 2002). In cases where there is no other way to identify a defendant, "courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference," in part because "for the defendant, there is no prejudice where the discovery request is narrowly tailored to only seek their

---

[1] Additionally, as noted in the Motion to Compel, Leifer tried to avoid filing this motion. Twitter could have agreed to provide account information that would not identify the Doe Defendants. For example, Twitter could provide data points that would inform Leifer about how many of the anonymous accounts are held by the same individual (accounts with consistent information) or the geographic location of the anonymous accounts. Twitter has refused to provide any such information. These pieces of information could provide additional circumstantial evidence for the actual malice element of defamation.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

1    identity." *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *4 (N.D.

2    Cal. Sep. 3, 2008).

3    As required by the Second Circuit, Leifer addressed each of the five *Arista* "principal

4    factors"[2] under Rule 45 prior to holding a Rule 26(f) conference in his motion for expedited

5    discovery. Parker Decl., Exh. 3. These factors are also used—unsurprisingly—to determine

6    whether an anonymous individual should be unmasked in the Second Circuit; after all, expedited

7    discovery would logically be required when addressing anonymous defendants.

8    Twitter's argument that the E.D.N.Y. Action did not "address the Second Circuit's

9    unmasking standard" is wrong: Leifer's entire motion for expedited discovery was based upon the

10   *Arista* standard. Twitter's Opp. to Mot. to Compel at 2. In *Mirza v. Yelp*, this Court presumed that

11   the District Court for the Southern District of New York found that a movant seeking the

12   unmasking of anonymous defendants had satisfied their burden or the court would not have

13   issued the subpoena at all. *Mirza v. Yelp*, No. 19-mc-80146-SK, ECF No. 12 at 5 (N.D. Cal. Jul.

14   23, 2019) ("Presumably, the District Court for the Southern District of New York believed that

15   Movants had satisfied their *prima facie* burden as well, or it would not have issued its order

16   permitting Movants to serve the third party subpoena for good cause in the first place.") (Kim, J.).

17   The court appropriately considered the *Arista* factors to allow for both expedited discovery and

18   identification of the anonymous users. *See* Parker Decl., Exh. 3 at 2; Parker Decl., Exh. 4 at 1-2.

19   The Order allowing for expedited discovery was and is correct, and should be given effect.

20   **B.    The *Arista* Factors Are an Appropriate Standard for Unmasking that the
          Ninth Circuit Should Utilize.**

21

22   Leifer does not seek to circumvent the *Highfields* standard as Twitter claims. Twitter's

23   Opp. to Mot. to Compel at 4. In fact, Leifer argued the exact opposite of this position—*i.e.*, his

24   claim for defamation meets the *Highfields* test. Mot. to Compel at 12–15. Leifer acknowledges

25   that the *Highfields* test could be applicable regardless of the underlying forum, but no case

26   ───────────────────
     [2] (1) The plaintiff's ability to make out a prima facie case, (2) the specificity of the discovery
27   request, (3) the absence of alternative means to obtain the information sought in the subpoena, (4)
     the need for the information sought in order to advance the claim, and (5) the defendant's
28   expectation of privacy. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010)
     (quoting *Sony Music Entertainment Inc. v. Does 1–40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)).

Twitter relied upon asserts that the *Highfields* test *must* be applied when moving to compel a subpoena from another jurisdiction. Instead, the four cases cited by Twitter *choose* to apply the *Highfields* standard. *See, e.g.*, *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*, 337 F.R.D. 639, 649 (N.D. Cal. 2020) ("Here, the Court relies on the standard as set forth in *Highfields*[.]"); *Awtry v. Glassdoor, Inc*., No. 16-mc-80028-JCS, 2016 WL 1275566, at *4, 12–13 (N.D. Cal. Apr. 1, 2016) (considering both the *Highfields* and *2TheMart.com* standards); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (acknowledging varied tests and that the "parties urge the court to use the test enunciated in *Highfields*[.]"); *Wirt v. Twitter, Inc.*, No. 21-mc-80166-JSC, 2021 WL 5919846, at *1 (N.D. Cal. Dec. 15, 2021). This is a legal practice—not a legal standard. The cases, although applying the *Highfields* test, do not require the use of the *Highfields* standard or even articulate that a standard from the Ninth Circuit must be used.

Leifer's Motion to Compel addressing multiple jurisdictions' legal standard for unmasking is not novel. *See, e.g.*, Mot. to Compel at 8–13, *Wirt*, No. 21-mc-80166-JSC, 2021 WL 5919846 (N.D. Cal. Dec. 15, 2021) (No. 21-mc-80166, ECF No. 1) (addressing both the Ninth Circuit standard and Utah standard for unmasking anonymous defendants); Mot. to Compel at 4-9, *Music Grp.* 82 F. Supp. 3d 979 (N.D. Cal. 2015) (No. 14-mc-80328, ECF No. 1) (focusing on the W.D. Washington *SaleHoo* standard and addressing *Highfields* minimally). Further, courts consider the nature of the speech in choosing the appropriate standard to apply. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) ("[T]he nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes."). Simply, Leifer requests the Court apply the most appropriate unmasking standard, which Leifer submits is the *Arista* standard.

## II.    LEIFER MEETS THE SECOND CIRCUIT'S *ARISTA* STANDARD FOR UNMASKING ANONYMOUS DEFENDANTS

Leifer has established all five *Arista* factors to unmask anonymous individuals in the Second Circuit. Twitter argues that Leifer has failed to satisfy two of the five *Arista* factors: first, that Leifer has not established a *prima facie* case for defamation and second, that his claims do

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

not outweigh the anonymous accountholders' expectation of privacy. Twitter does not address the other three *Arista* factors and presumptively concedes that Leifer meets these factors.[3]

### A. Leifer Established a *Prima Facie* Case for Defamation.

The first *Arista* factor requires a "concrete[] showing of a prima facie claim" of defamation sufficient to provide good cause to allow expedited discovery. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010). Leifer has provided sufficient evidence to establish a prima facie case of defamation per se. Parker Decl., Exh. 2 (Complaint). The elements of defamation under New York law are: "1) a false and defamatory statement of and concerning the plaintiff; 2) publication by defendant of such a statement to a third party; 3) fault on part of the defendant; and 4) injury to plaintiff." *Mirza v. Doe #1*, No. 20-CIV-9877, 2021 WL 4596597, *6 (S.D.N.Y. Oct. 6, 2021) (*citing Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 676 (2d Cir. 2002)). Twitter argues that Leifer failed to adequately plead 1) the statements at issue are factual and not based on opinion, 2) the falsity of those statements, and 3) actual malice under New York's anti-SLAPP statute.

### 1. The tweets at issue are statements of fact.

Twitter articulates that in New York statements made in online forums are considered opinion and not fact. This is simply not true. Indeed, Twitter itself consistently cites *Margolies v. Rudoph*, which found a Facebook Post to be a statement of fact. No. 21-CV-2447-SJB, 2022 WL 2062460, at *5 (E.D.N.Y. June 6, 2022) ("The Facebook Post, plainly and simply, is Rudolph saying that several women have told her that Margolies caused them harm, either by sexually harassing or assaulting them or through 'other abuses of power.' This is a statement of fact."). Further, Twitter cites to *Jacobus v. Trump*, which collected cases discussing whether statements made in online forums are more likely to be opinion. 51 N.Y.S.3d 330, 339 (N.Y. Sup. Ct. 2017), *aff'd*, 64 N.Y.S.3d 889 (2017). One of those cases, *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, articulated that these cases "do not stand for the proposition that no comments

---

[3] The remaining three *Arista* factors are: 1) the specificity of the discovery request, 2) the absence of alternative means to obtain the information sought in the subpoena, and 3) the need for the information sought in order to advance the claim. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010).

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

posted on an online forum can ever be found to be defamatory." 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir. 2016). Twitter's position is wrong and abundant cases confirm that.

The context of the statements is paramount. The court must decide "whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were . . . written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." *Margolies*, 2022 WL 2062460, at *4 (citing *Celle v. Filipino Rep. Enters. Inc.,* 209 F. 3d 163, 178 (2d Cir. 2000)). New York law provides three factors to determine whether statements are factual assertions and not opinions:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Margolies*, 2022 WL 2062460, at *4 (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 110 (2d Cir. 2017)) (alterations in original). Further, even if a statement is found to be opinion, "there may be liability for defamation where there is 'a clear but false implication that the author is privy to facts about the person that are unknown to the general reader.'" *Margolies*, 2022 WL 2062460, at n. 36 (quoting *Wexler v. Dorsey & Whitney LLP*, 815 F. App'x 618, 622 (2d Cir. 2014)); *see also Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) ("[H]ypothesis or conjecture . . . may yet be actionable if they imply that the speaker's opinion is based on the speaker's knowledge of facts that not disclosed to the reader.").

Leifer pleaded that the Defendants' various tweets are *factually* false. Leifer set forth specific examples of the Doe Defendants' false and defamatory tweets. Parker Decl., Exh. 2 ¶¶ 27-49; exs. 2–16. The tweets listed below provide examples of statements of fact, or, at the very least, provides a false implication that the author had information unknown to the general reader:

- ¶ 30 and ex. 4 – Tweet stated "Or else ull look like shulim liefer u c he was fired from a job for harrasing a woman." (errors in original) (emphasis added).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

- ¶ 32 and ex. 5 – Tweet stated "You were <u>fired from a home care agency</u>[.]" (emphasis added).
- ¶ 34 and ex. 6 – Tweet stated "Pls before u defend shulim liefer go check his past y <u>he was fired 2 jobs in 2 years</u>. Mayb speak to <u>women who filed the complaints</u>." (error in original) (emphasis added).

These are not statements that can be described as loose, figurative, or hyperbolic—each statement directly asserts that Leifer was fired. One of the statements claims Leifer was fired for harassing women. Another statement claims that women filed complaints against Leifer, implying this was the reason Leifer was fired. The Doe Defendants thus make fact-based allegations capable of being proven true or false. Simply because the tweets have some ambiguity does not mean that the core allegation is not provable, or disprovable. *See Margolies*, 2022 WL 2062460, at *6.

Further, the tweets imply that the accountholder was privy to facts and information not available to the general reader. *See Wexler*, 815 F. App'x 618, at 621. These types of factual assertions on social media accounts are exactly the types of posts that *Margolies* deemed to be defamatory. 2022 WL 2062460, at *5 ("[T]he Facebook Post has a capable and precise meaning: that Rudolph was informed by multiple women that Margolies and one other person committed assault or harassment or something similar."). Alleging Leifer committed acts of workplace harassment against female peers is not a mere expression of opinion. *Torati v. Hodak*, 47 N.Y.S.3d 288, 290 (1st Dep't 2017). Leifer has met the standard to determine whether the tweets contain factual assertions by evidencing specific language with a precise meaning, that these statements are provable, and that the holistic context implies that the author of each tweet was asserting facts unknown to general reader.

## 2.    The tweets at issue are false and Leifer adequately pleaded so.

Twitter does not appear to take issue with whether the statements alleged are false, but whether Leifer adequately pleaded falsity. To plead falsity, "a plaintiff 'must identify *how* the defendant's statement was false to survive a motion to dismiss." *Margolies*, 2022 WL 2062460, at *10 (quoting *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017)). The plaintiff must plead facts that would establish that the defendant's statements are false. *Margolies*, 2022 WL 2062460, at *10.

1    Leifer does not simply make conclusory allegations that the tweets are false; instead

2    Leifer has identified reasons the tweets are false and pleaded facts rendering the tweets false. For

3    example, Leifer pleaded that he "had not been fired from his job, and these accusations were

4    false." Parker Decl., Exh. 2, at ¶ 28. Therefore, every tweet stating Leifer was fired is false and a

5    plain reading of the tweets further confirms that the stated reason for Leifer's firing must also be

6    false. Leifer himself engaged with @KolYisrael stating "Lie and falsehood" in Hebrew. *Id.*

7    Further, Leifer alleged that he spoke with his prior employer, Preferred Home Care of New York,

8    to confirm that his prior employer had not spoken with anyone his employment or choice to leave

9    the company. *Id.* at 42. Leifer has sent cease and desist letters articulating the false nature of these

10   types of statements. Parker Decl., Exh. 2, at ¶ 42, ex. 9. Twitter compares Leifer's allegations to

11   those in *Margolies* where the court determined the plaintiff made conclusory statements about the

12   falsity of the posted allegations. *Margolies*, 2022 WL 2062460, at *10. But Leifer focused on the

13   element of these statements that was readily identifiable as false: *was Leifer fired?* Leifer desires

14   to prove the allegations of sexual misconduct false as well, but does not rely on conclusory, vague

15   assertions that the sexual misconduct claims are false as seen in *Margolies*. Leifer directly

16   pleaded facts related to his employment rendering the statements false.

17                    **3.    Leifer adequately pleaded actual malice.**

18   Actual malice is whether the defendant published the statement without believing the truth

19   of the statement. *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)

20   (measuring "the speaker's subjective doubt about the truth of the publication."). The Supreme

21   Court has identified several factors relevant to actual malice including "1) whether a story is

22   fabricated or is based wholly on an unverified, anonymous source, 2) whether the defendant's

23   allegations are so inherently improbable that only a reckless person would have put them in

24   circulation, or 3) whether there are obvious reasons to doubt the veracity of the informant or the

25   accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Further, "[a]ctual

26   malice can be established through the *defendant's own actions or statements*, the dubious nature

27   of his sources, [and] the *inherent improbability of the story* [among] other circumstantial

28   evidence." *Celle*, 209 F.3d at 183 (alterations in original) (emphasis added).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

1        Regardless of whether Leifer is a public figure, limited-purpose public figure, or neither,

2   or whether the New York anti-SLAPP law is applicable, Leifer did adequately plead actual

3   malice. As Twitter itself identified, Leifer pleaded that all statements referenced within the

4   Complaint were made with malice, awareness of the falsity, or at a minimum the speakers did not

5   have any reasonable basis to believe the statements were true. Parker Decl., Exh. 2, ¶¶ 63, 67-69,

6   72. Leifer pleaded the statements contained in fifteen tweets by nine anonymous Twitter accounts

7   "include *intentional* false allegations asserted specifically to malign Leifer's character[.]" Parker

8   Decl., Exh. 2 ¶ 26 (emphasis added). Twitter's suggestion that the Complaint and Motion are

9   devoid of pleadings and arguments related to actual malice is incorrect.

10       Leifer did allege facts pertinent to actual malice in the Complaint illustrating a reckless

11  disregard for the truth. The Supreme Court has set forth that whether "there are obvious reasons

12  to doubt the veracity of the informant or the accuracy of his reports" is one of the factors that

13  must be considered into an inquiry of whether a defendant acted with actual malice. *St. Amant*,

14  390 U.S. at 732. The Supreme Court has clarified that to prove actual malice, "a plaintiff is

15  entitled to prove the defendant's state of mind through circumstantial evidence." *Harte-Hanks*

16  *Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989). The Doe Defendants allege that

17  Leifer was fired from his job for sexual harassment of women. Parker Decl., Exh. 2, ¶¶ 27, 30, 32,

18  34. These allegations are not broad, general opinions, but specific and factual statements. The

19  false statements include that Leifer was fired from a "home care agency" and that Leifer was fired

20  from "2 jobs in 2 years." Parker Decl., Exh. 2, ¶¶ 32, 34. These statements are of the type that

21  must have been made with a reckless disregard for the truth, and Leifer properly pleaded their

22  fictitious origin and spurious nature in his original Complaint to demonstrate this.

23       Adding context to why the Doe Defendants may have levied such blatantly false

24  allegations against him, in the Complaint, Leifer described his activism for education reform in

25  the Hasidic Community. Leifer stated that he is known in the Hasidic Community as an activist

26  and his advocacy has been recognized, Parker Decl., Exh. 2, at ¶ 23, and when his advocacy is

27  successful he is often met with negative bursts of activity on Twitter to provide a counter

28  narrative, as exampled in the various tweets. *Id.* at 24. Further, Leifer pleaded how the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-9-

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

defamatory tweets have affected him and his inability to secure employment. *Id.* at 58-60. Leifer also provided examples of tweets illustrating threats and impersonation. *Id.* ¶¶ 43, 48, exs. 10, 13–16 (ex. 10 translates as "One who engages in intercourse with a married woman before witnesses and with forewarning, his death is by strangulation."). Leifer pleaded that the defamation is related to his activism. And although ill will alone is not enough to establish actual malice, death threats and impersonation provide evidence demonstrating a reckless disregard for the truth. *Celle*, 209 F.3d at 183 ("Evidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard . . . may also support a finding of actual malice.").

### B. Leifer's Claim Outweighs the Anonymous Doe Defendants' Expectation of Privacy.

The fifth *Arista* factor balances "the parties' expectation of privacy," weighing a plaintiff's interest in justice and fair application of the law against a defendant's privacy interest. *Arista* at 119; *Taylor v. Doe*, No. 1:20-CV-03398, 2021 WL 2940919, *5 (S.D.N.Y. July 12, 2021). Twitter argues "Leifer's need to serve his Complaint cannot alone overcome the accountholders' right to privacy" and "that need cannot—without more—justify unmasking anonymous defendants." Twitter's Opp. to Mot. to Compel at 11. To characterize Leifer's request here as simply the "need to serve his Complaint" unfairly limits and discredits the harm Leifer has endured due to Doe Defendants' defamation, and demeans Leifer's rightful interest in access to justice and legal remedy. Leifer has articulated the harm he has endured, including loss of employability and inability to secure new employment within his Hasidic community. Parker Decl., Exh. 2 ¶¶ 55-60. Leifer's reputation and livelihood have been directly impacted by the defamatory tweets.

Twitter compares the Doe Defendants' speech to "pure expressive" speech. Twitter's Opp. to Mot. to Compel at 10. This is a distinction without a difference. The First Amendment does not protect defamation as purely expressive content. *United States v. Stevens*, 559 U.S. 460, 468-69 (2010). Going farther afield, Twitter compares the E.D.N.Y. Action to *Cablevision*. Twitter's reliance is misplaced because in that case the anonymous defendant posted about publicly traded

CROWELL
& MORING LLP
ATTORNEYS AT LAW

stocks, and the speech in *Cablevision* was not even alleged to be defamation. *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. MISC-08-347 (ARR)(MDG), 2010 WL 2219343, at \*2–3 (E.D.N.Y. Feb. 5, 2010), *report and recommendation adopted in relevant part*, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010). The court in *Cablevision* considered whether the speech was commercial or purely expressive, not whether the speech was defamatory. *Id*. at \*8-9.

In contrast, the *Arista* factor seeks to balance expectations of privacy, recognizing that privacy expectations differ based on the type of speech, namely defamatory speech. *Arista* at 119. *Arista* seeks to *balance* the parties' "expectation of privacy." *Id*. And Twitter's own Privacy Policy makes clear that its users' expectation of privacy is not absolute because Twitter specifically states that it "may preserve, use, share, or disclose [account information] if [Twitter] believes it is reasonably necessary to comply with a law, regulation, legal process, or government request." *See* Privacy Policy, Twitter at § 3.3 (Aug. 19, 2021), https://twitter.com/en/privacy. Twitter's own Privacy Policy—putting all of its users on notice that Twitter may have to respond to legal process—necessarily lowers its users' expectations of privacy. *See Mirza v. Doe #1*, No. 20-CIV-9877, 2021 WL 4596597, \*9 (S.D.N.Y. Oct. 6, 2021) (finding Yelp's privacy policy put "Defendants [] on constructive notice that anyone who uses Yelp may be sued for leaving insulting reviews."). Twitter's argument contradicts its own public practices and statements.

For the foregoing reasons, Leifer properly met the first and fifth *Arista* factor and therefore meets the standard for unmasking the anonymous defendants.

## III.    LEIFER MEETS THE NINTH CIRCUIT'S *HIGHFIELDS* STANDARD FOR UNMASKING ANONYMOUS DEFENDANTS

### A.    Leifer has Provided a Real Evidentiary Basis for the Defamation Per Se Claim under New York Law.

Leifer has done more than plead his claim for defamation—Leifer has also set forth an evidentiary basis for this claim. The *Highfields* standard requires Leifer to "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, at 975-76 (N.D. Cal 2005). Leifer presents this Court with *real*

*evidence*, exemplified by the Doe Defendants' tweets, illustrating wrongful conduct. Leifer has also presented evidence that these defamatory tweets have caused real harm and Leifer has *no* other options to pursue reputational rehabilitation.

Twitter complains Leifer lacks evidence to prove falsity and actual malice. Twitter's Opp. to Mot. to Compel at 7-9, 12-13. This is simply wrong, but more importantly illustrates Twitter's desire to quash any valid claim to identify users. Leifer's Complaint articulated falsity because he was not fired, which he publicly stated in a response to one of the initial accusations. Parker Decl., Exh. 2, ¶ 28, exs. 2-3. In the same tweet, Leifer sought for the anonymous user to provide further detail, enabling Leifer to understand the allegation and present evidence to refute the accusations. *Id.* Leifer desires nothing more than to be able to prove wholly the falsity of the sexual harassment claim—it is indeed the entire reason for his lawsuit. But without discovery, Leifer can only make a general denial of the defamatory claim. Even so, the falsity element is met because the tweets state Leifer was fired, which is not true. *See supra* Section II.A.2.

For actual malice, Twitter compares this case with *Margolies*, which found that the complaint did not "provide any facts on which to infer that Rudolph made the Facebook Post either with knowledge that the allegations against [Plaintiff] were false or in reckless disregard of their falsity." 2022 WL 2062460, at *7. This is incorrect as Leifer has provided circumstantial evidence of actual malice in the Complaint illustrating a reckless disregard for the truth. *See supra* Section II.A.3. In *Margolies*, the defendant was known. Here, the Doe Defendants responsible for Leifer's defamation are unknown, and Leifer is left in a procedural bind. Discovery in this defamation case should provide him a direct opportunity to adduce facts establishing actual malice and the knowledge of the anonymous account holders. This chicken-and-egg conundrum arises when applying New York defamation law and the Ninth Circuit's unmasking standard. Adding to this, the Second Circuit has found that an "actual malice inquir[y] typically requires discovery." *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 118-19 (2d Cir. 2005) (citing *Church of Scientology*, 238 F.3d 168, at 173); *Khalil v. Fox Corp.,* No. 21 Civ. 10248 (LLS), 2022 WL 4467622, at *9 (S.D.N.Y. Sept. 26, 2022) (same). The court found that given an opportunity, the plaintiff may be able to discover facts that support the speaker's

1    subjective doubts about the truth of the publication. *Karedes*, 423 F.3d at 119.

2         What is more, Twitter argues that New York's defamation law, and specifically the New

3    York anti-SLAPP statute, make actual malice an element of defamation for actions involving

4    public participation on a public forum regarding issues of public interest. Twitter's Opp. to Mot.

5    to Compel at 8-9; N.Y. Civ. Rights Law § 76-a(1)(a)(1–2). The New York unmasking standard

6    under *Arista*, however, would only require a *prima facie* case for defamation with an

7    understanding that discovery is required to provide evidence of actual malice. *See Karedes*, 423

8    F.3d at 118-19; *Arista*, 604 F.3d at 119. Whereas the *Highfields* unmasking standard requires an

9    evidentiary burden not contemplated under the New York defamation standard including the New

10   York anti-SLAPP statute.[4] Quite simply, without engaging in any discovery, Twitter expects

11   Leifer to present evidence of the intent and knowledge of anonymous individuals prior to being

12   able to identify those individuals—a near-impossible situation.

13        Defamation, under New York law, requires (1) a false, defamatory statement, (2)

14   publication to a third party, (3) fault, (4) and injury (unless the claim is for defamation *per se*).

15   *Mirza v. Doe #1*, No. 20-CIV-9877, 2021 WL 4596597, *6 (S.D.N.Y. Oct. 6, 2021). Leifer

16   alleges defamation *per se* based on various tweets that made specific defamatory accusations that

17   he engaged in sexual workplace harassment of females. Leifer pleaded that the statements

18   contained in fifteen tweets by nine anonymous Twitter accounts "include intentional false

19   allegations asserted specifically to malign Leifer's character[.]" Parker Decl., Exh. 2 ¶ 26. Leifer

20   set out specific facts outlining the falsity, defamatory nature, publication to Twitter, fault, and

21   harm. *See supra* Section I.C.1 (discussing Leifer's prima facie case for defamation *per se*

22   articulated in Parker Decl., Exh. 2 ¶¶ 27-49).

23        **B.    The *Highfields*' Balancing of Harms Would Weigh in Leifer's Favor.**

24        The second prong of the *Highfields* standard, consistent with the fifth prong of *Arista*,

25   requires the court to assess the "harms and competing interests" of each party. *Highfields*, 385 F.

26

27   _____

[4] Comparatively, the California Anti-SLAPP statute does not modify the elements of the
underlying defamation claim, but instead provides a cause of action for a special motion to strike

28   the claim. CAL. CIV. PROC. CODE § 425.16 (West 2023). Yet another reason why Leifer articulates
that the *Arista* factors are the appropriate standard for unmasking.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

Supp. 2d at 976. Leifer submits that his own interests in being free from defamation and false accusations of sexual misconduct far outweigh any privacy interests in anonymous and defamatory speech, specifically excluded from First Amendment protection. *USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010).

Courts are validly concerned about a chilling effect on anonymous speech based on frivolous allegations pursued solely for the purpose of discovering an anonymous speaker's identity. As a matter of principle, simply because some anonymous defamers may be dissuaded from posting on Twitter, that is not tantamount to a chilling effect on free speech. Indeed, the speech at issue in these tweets is likely not protected by the First Amendment at all. In *Mirza v. Yelp*, this Court found that though "anonymous speech is protected by the First Amendment, that protection does not extend to illegal speech." *Mirza v. Yelp*, No. 19-mc-80146-SK, ECF No. 12 at 5 (N.D. Cal. Jul. 23 2019) (Kim, J.). In that case, this Court applied *Highfields* and ordered compliance with a subpoena seeking to unmask anonymous defendants because the speech "directly affect[ed] Movant's livelihood and Movants will be unable to pursue their claim absent disclosure of the Doe defendants' identities" and "multiple courts have concluded that the disclosure of the identities of anonymous speakers is warranted where the anonymous speakers have made falsifiable factual statements and the plaintiff would be unable to vindicate his rights absent discovery." *Id.* The harms and burdens recognized by this Court in previous unmasking cases are the same ones that Leifer currently faces.

The Court need not look beyond the factual reality of Leifer's situation, which was pleaded clearly in his Complaint and further articulated in his Motion to Compel. In recent years, Leifer, a member of the Hasidic Orthodox Jewish community, became a "public advocate" within his own community seeking various reforms, but most importantly educational reform. Parker Decl., Ex. 2, ¶¶ 11, 19. The issue is personal to Leifer because like many other boys within his community, he only received a fourth-grade education. *Id.* ¶¶ 13-15. Leifer appreciates that advocates and even those generally engaged on social media may receive criticism, ridicule, and otherwise unsavory feedback on the internet and social media platforms, as generally evidenced by many of the posts attached as exhibits to the Complaint. *Id.* ¶¶ 24, 26; exs. 2-16. However, the

general criticism has devolved into direct statements asserting Leifer was fired due to workplace sexual harassment. *Id.* ¶¶ 27-49, exs. 2-16; *see, e.g., id.* ¶ 30 and ex. 4 ("Or else ull look like shulim liefer u c he was fired from a job for harrasing a woman.") (errors in original). Some anonymous Twitter users have even impersonated Leifer. *Id.* 48, exs. 13-16. Due to these anonymous individuals, Leifer has struggled to secure or maintain employment. *Id.* ¶¶ 58–60. Even worse, Leifer has received threatening tweets, and it is known that activists within the Hasidic Community have been previously subjected to violent attacks. *Id.* ¶¶ 43–44, 56–57.

Leifer, a man with minimal education attempting to improve his community, finds himself accused of sexual harassment. With regard to harm, the "gravam[e]n of an action alleging defamation is an injury to reputation." *Celle*, 209 F.3d at 177. Leifer is not a powerful individual seeking to silence valid criticism or women rightfully accusing sexual predators. Leifer is an individual from an insular community who would like to clear his name and rehabilitate his reputation. If Twitter prevails, it will leave Leifer with no legal recourse and will elevate the interests of anonymous defamers above all else.

## CONCLUSION

Based on the foregoing, as Judge Bulsara found, Movant Shulim Leifer has satisfied the unmasking standard outlined in *Arista* and, we submit, the similar unmasking standard outlined in *Highfields* followed in the Ninth Circuit. Leifer has provided a real evidentiary basis to establish the prima facie claim of defamation *per se*. Further, the harm to Leifer and his right to seek legal recourse outweighs the defendants' privacy interests. Leifer therefore respectfully requests that this Court, regardless of jurisdiction or test, compel Twitter to respond to Leifer's properly issued subpoena and order that Twitter produce the requested information.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-15-

MOVANT REPLY ISO MTN TO COMPEL
TWITTER TO RESPOND TO SUBPOENA
CASE NO. 3:22-MC-80319-SK

1    Dated: January 9, 2023                    CROWELL & MORING LLP

2

3                                              By: */s/ Warrington S. Parker, III*
                                               Warrington S. Parker, III
4                                              Alexander Urbelis
                                               Preetha Chakrabarti
5
                                               Attorneys for Movant
6                                              SHULIM LEIFER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28