UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TWITTER INC., | Case No. 22-mc-80319-SK<br><br>**ORDER GRANTING MOTION TO COMPEL**<br><br>Regarding Docket No. 1 |

This dispute arises out of a lawsuit pending in the United States District Court for the Eastern District of New York: *Shulim Leifer v. John Does 1-9,* Civil Action No. 22-CV-1770-NM-SJB ("Underlying Lawsuit"). A subpoena was issued in the Underlying Lawsuit pursuant to Federal Rule of Civil Procedure 45 seeking the identity of the Doe Defendants from Twitter, Inc. Petitioner Shulim Leifer seeks to compel Twitter's response to the subpoena and Twitter opposes the motion.

The Doe Defendants posted on Twitter, and Petitioner alleges that the Doe Defendants defamed him in doing so. Twitter argues that the identity of the Doe Defendants and their speech is protected under the First Amendment and that Petitioner has not made the requisite showing to compel disclosure of their identities.

## ANALYSIS

Twitter argues that the Court should not compel compliance with the subpoena because the subpoena seeks information revealing the identity of an anonymous online speaker and that Petitioner has not satisfied the First Amendment safeguards that apply in such circumstances. According to Twitter, Petitioner must "persuade the court that there is a real evidentiary basis for believing that the [speaker] has engaged in wrongful conduct that has caused real harm to the interests of the [issuing party]" in order to unmask the speaker. *See Music Grp. Macao Com.*

*Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)). Petitioner counters that the Court should apply the test from the Second Circuit, the controlling authority where the Underlying Lawsuit was filed. However, the Court need not resolve this issue because, even applying the stricter standard, the Court finds that Petitioner has made the requisite showing.

"It is well established that the First Amendment protects the right to anonymous speech." *Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 342 (1995) ("An author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom protected by the First Amendment"). Moreover, the protection for anonymous speech applies to speech on the internet. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1172-73 (9th Cir. 2011) ("[O]nline speech stands on the same footing as other speech – there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech.") (quoting *Reno v. Am. Civil Liberties Union,* 521 U.S. 844, 870 (1997)). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without "fear of economic or official retaliation ... [or] concern about social ostracism." *Id*. (quoting *McIntyre*, 514 U.S. at 341-42).

"The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). "[T]he nature of the speech should be the driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." *Id*. at 1177; *see also Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1154 (N.D. Cal. 2013) (noting that courts begin "by considering the nature of the speech before determining the appropriate standard").

Courts apply a rigorous or "most exacting" standard when the speech is political, religious, or literary. In contrast, commercial speech is afforded less protection. *In re Anonymous Online Speakers*, 661 F.3d at 1177. Where, as here, the speech touches on a matter of public interest,

courts in this district have applied a stronger standard than if the speech were commercial. *See Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005); *see also Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

Federal Rule of Civil Procedure 45 authorizes the issuance of a subpoena to a nonparty to testify, produce documents or things, or allow the inspection of premises. Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45 incorporates the scope of discovery dictated by Rule 26. *Cabell v. Zorro Prods. Inc., et al.*, 2018 WL 3023343, at *2 (N.D. Cal. June 18, 2018) (citing *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2015)). Accordingly, a party may subpoena "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). On a motion to compel discovery, the moving party must first demonstrate that the information requested is within the scope of permissible discovery. *In re: Subpoena to Apple Inc.*, 2014 WL 2798863, at *2 (N.D. Cal. Jun 19, 2014). The burden then shifts to the party opposing discovery to show "that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information. *Id.* (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n.17 (1978)).

Under *Highfields Capital*, a party seeking to discover the identity of an anonymous speaker must first "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Highfields Capital*, 385 F. Supp. 2d at 975-76. If the plaintiff makes this showing, the court must then "assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant" by ordering that the defendant's identity be disclosed. *Id.* at 976. If such an assessment reveals that disclosing the defendant's identity "would cause relatively little harm to the defendant's First Amendment and privacy rights," but is "necessary to enable [the] plaintiff to protect against or remedy serious wrongs," then the court should allow the disclosure. *Id.*

A "real evidentiary basis" requires "*competent evidence* . . . address[ing] *all* of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the

3

1  causes of action plaintiff asserts." *Id.* at 975 (emphasis in original). "The court may not enforce
2  the subpoena if, under plaintiff's showing, any *essential* fact or finding lacks the requisite
3  evidentiary support." *Id.* at 976 (emphasis in original).
4        To establish a claim for defamation under New York law, a plaintiff must allege: "1) a
5  false statement, 2) that was published without privilege or authorization to a third party, 3)
6  constituted fault as judged by, at a minimum, a negligence standard, and 4) either caused a special
7  harm or constituted defamation per se." *Brahms v. Carver*, 33 F. Supp. 3d 192, 197-98 (E.D.N.Y.
8  2014) (internal citations omitted). Twitter further argues that because Petitioner alleges that he is
9  a public advocate, the New York anti-SLAPP statute applies, requiring Plaintiff to show malice.
10 (Dkt. No. 19 (Twitter's Opp.) (citing N.Y. Civ. Rights Law § 76-a(1)(a)(1)-(2).) Actual malice is
11 whether the defendant published the statement without believing the truth of the statement.
12 *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (measuring "the speaker's
13 subjective doubt about the truth of the publication.").
14       Upon review of the evidence Petitioner submitted, the Court finds that he satisfies the
15 standard under *Highfields Capital*. Petitioner has provided competent evidence to support his
16 defamation claim. Petitioner contends that the Doe Defendants published false tweets about him
17 in which they stated that he was fired for harassing women. (Dkt. No. 22, ¶¶ 23, 31, 32.) He
18 further contends that the Doe Defendants made these false tweets in retaliation for his advocacy
19 actions and to discredit him. (*Id.*, ¶¶ 20, 24, 28, 43.) While Petitioner acknowledges that he was
20 laid off due to an employer's financial difficulty and due to "lack of fit", he declares he has never
21 been fired due to any complaints about him regarding harassment or due to any job-related poor
22 performance. (Dkt. No. 22, ¶¶ 10-12, 34-35, 48.) Additionally, Petitioner's declaration provides
23 credible evidence that the tweets were made with malice – that the tweets were knowingly false
24 and were posted with the intent to discredit him. Accordingly, the Court GRANTS Petitioner's
25 motion to compel.

## CONCLUSION

27       For the foregoing reasons, the Court GRANTS Petitioner's motion to compel compliance
28 with the subpoena. By no later than February 28, 2023, Twitter shall respond to the subpoena at

issue and produce the information to Petitioner within Twitter's possession which would allow or aid in determining the identity of Does 1-9, including the IP Addresses from which the offending posts were made, and the email, or emails used by Does 1-9 when registering for their accounts using the handles: @erpsmosh; @KleinMatt1; @Ralphhoppy; @YankyStern4; @ConservativeYi1; @Frauholla3; @BaruchSilverst1; @yafered; @ShuIimLeifer.

**IT IS SO ORDERED**.

Dated: February 16, 2023



SALLIE KIM
United States Magistrate Judge

5